IN THE MATTER OF EDWARD H. BACKES, AN ATTORNEY
AND COUNSELLOR AT LAW.

Argued October 11, 1954—Decided November 15, 1954.

*Mr. Frederick C. Vonhof,* by direction of the court, argued
for the order to show cause.

*Mr. John O. Bigelow* argued in opposition to the order to show cause.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. The respondent is charged with a willful and knowing attempt to perpetrate a fraud upon the courts of this State in the initiation and conduct of a divorce action on behalf of one Earlin Dillard.

Dillard was living with one Lillian Dillard in 1946 when respondent sold Dillard a house in Vauxhall, Union County, through a corporation, Orange Land Company, solely owned by respondent. A purchase money mortgage for $4,000 was taken by respondent in the name of the Company. Seven years later, in 1953, respondent, through the corporation, helped Dillard finance the purchase of abutting lots on each side of the house. Both the mortgage and the deed to the lots described Lillian Dillard as the wife of Dillard.

A few months after that purchase Dillard revealed to respondent that he had married Lillian in 1933 although not divorced from Viola whom he had married in 1922 in Virginia and from whom he separated in 1926. Dillard professed that he had married Lillian after a lapse of more than seven years following his separation from Viola because he had heard that Viola had been declared legally dead. Dillard gave respondent the address of a daughter of his marriage with Viola and respondent wrote to the daughter and learned from her that Viola was alive and living in New York City. Dillard shortly thereafter retained respondent to secure a divorce from Viola and paid him a fee of $350. He told respondent that he wanted the divorce so that Viola on his death could not "have anything belonging to me, insurance or nothing," and the respondent told him "he thought he could get it."

Respondent filed a divorce complaint, making no mention of Dillard's marriage to Lillian and charging Viola with desertion. Respondent entertained the hope that Viola would not contest the action. That hope was revealed in a letter he wrote Viola forwarding her a copy of the summons and

complaint and requesting an acknowledgment of service. He stated in the letter:

"Earlin Dillard has filed suit against you for divorce on the ground of desertion * * * *I am sure that you will agree with me, that after all these years, it is the proper thing to do.* * * In order to facilitate matters, I would greatly appreciate it if you would acknowledge service * * *. If you will kindly do this it will avoid the necessity of my having to publish the same in the paper." [Emphasis supplied.]

Respondent's hope was not realized. Viola retained counsel who filed an answer pleading the defense of Dillard's adultery with Lillian, and a counterclaim for a divorce on that ground, asking alimony.

Respondent thought that Viola might still be discouraged. He reasoned, he says, that she was defending only to get her hands on some of Dillard's property. He testified at the hearing before the Ethics and Grievance Committee:

"I knew Viola Dillard was after an interest in the property and I wanted to impress upon the attorney representing the defendant that he had very little interest in the property, that there was a $4,000 mortgage on it. I thought that would take the wind out of their sails. I knew the only interest they had in the suit was to see what they could get out of it."

The fact was, as he admitted in his testimony, "There was very little due" on the mortgage because of payments that Dillard had regularly made thereon over six and one-half years. Pursuing his strategy, however, he incorporated in the answer to Viola's counterclaim the wholly frivolous and untrue allegation that

"The reason for his [Dillard's] instituting this suit for divorce was for the purpose of clearing the title of said property herein mentioned, at the behest of the Orange Land Co., who holds a certain purchase money mortgage on the said property in the amount of $4,000.00."

Also in obvious pursuit of the same objective, he refrained in answering the counterclaim from suggesting a defense to the claim of recrimination by reason of the alleged good

faith of Dillard in marrying Lillian in the honest belief that Viola had been declared legally dead. He chose the course which would avoid the necessity of spreading the true facts upon the record by equivocal responses to the counterclaim's allegations that "Plaintiff committed adultery with a woman whose first name is * * * Lillian," and "Plaintiff and co-respondent went through a pretended ceremony of marriage and * * * have been cohabiting as husband and wife." These were answered with the statements, "Plaintiff denies that he committed adultery with a woman whose first name is Lillian" and "denies that he and co-respondent went through a pretended ceremony of marriage."

But the hoped-for result did not materialize. Viola's attorney propounded interrogatories, answers to which as to Dillard's relations with Lillian forced the response that "Plaintiff believing his wife was dead married Lillian Dillard in New York." Thereupon a motion was made on Viola's behalf to dismiss Dillard's complaint as a "fraud upon the court" and to strike the frivolous allegation that Dillard's action was filed to clear the title to the property. Respondent filed no affidavits in opposition to the motion but at the oral argument contended that Dillard had married Lillian in good faith believing Viola had been declared legally dead. When the trial judge found no merit in that position respondent says he felt, "All right, I could not do anything about it." Such is the reason given for his assent as to form to the order dismissing the complaint, which order recites that plaintiff had "consented to the entry of an order" granting applications "(1) to dismiss plaintiff's complaint for divorce on the ground the same was filed in fraud of the court" and "(2) to strike that part of paragraph 5 of plaintiff's answer to counterclaim asserting that his reason for filing his complaint for divorce was to clear the title to the property."

The law regards divorce actions as imposing special responsibilities upon the court and attorneys as officers of the court. This is because in every suit for divorce the State is in fact if not in name a third party having a substantial

interest. The public is represented by the conscience of the court, *Duerner v. Duerner*, 142 *N. J. Eq.* 759 (*E. & A.* 1948), and "The law regards these actions which tend to disrupt the marriage status with regret—certainly it does not encourage them." *Shaffer v. Shaffer*, 129 *N. J. Eq.* 42, 44 (*E. & A.* 1941).

Our rules of court governing matrimonial actions, *R. R.* 4:93 to *R. R.* 4:98, cast special burdens upon attorneys in the conduct of such actions, in purposeful reflection of the deep concern for the maintenance of the integrity of such proceedings to avert disservice to the public interest. The rules recognize that protection of the State's interest in particular cases necessarily lies with the attorneys in the first instance because of their superior knowledge of facts made known to the court ordinarily through their representations. It is implicit in our scheme of things that the lawyer who endeavors deliberately to prevent the revelation of facts which, revealed, may be destructive of his client's right to secure a divorce under our laws is faithless to his trust as an officer of the court to conserve and protect the state's interest and is deserving of severest censure.

It is argued on respondent's behalf that lawyers, even when aware of facts which, disclosed, would defeat the suit, cannot be and are not held to a duty to refrain from prosecuting an action for divorce or to anticipate a defense in pleadings filed on behalf of a client in the divorce suit. See *Drinker, Legal Ethics, p.* 124, *Problems of Professional Ethics in Matrimonial Litigations,* 66 *Harv. L. Rev.* 443 (1953). It is further argued that at all events respondent might reasonably and honestly have believed that Viola's defense of recrimination could not be sustained if there was a showing that Dillard married Lillian under the honest belief that Viola had been declared legally dead and therefore that, the form of the denials in the answer to the counterclaim was entirely proper in the circumstances.

We have no reason to deal with these arguments as they are not germane to this case. From the outset, starting with the thinly veiled invitation to collusion contained in his

letter to Viola, respondent, by his own admission, strove to prevent or discourage a defense of the action by Viola, and as a necessary and integral part of that plan refrained as long as it was within his power to do so from putting upon the record the facts of Dillard's relations with Lillian. That was not mere strategy in the conduct of the litigation, designed to put forward his best efforts in his client's behalf. His conduct can only be characterized as intentionally calculated to obtain a divorce for Dillard whatever the merit or lack of merit in Viola's defense of recrimination. That was conduct in flagrant disregard of his duty as an officer of the court not intentionally to frustrate, but, if anything, to aid, the court in the preservation of the integrity of divorce proceedings in the furtherance of the state's interest. Moreover, his inclusion of the frivolous and untrue defense to the counterclaim that Dillard wanted the divorce only to clear title to property is itself a ground for disciplinary action. That was done, by his own admission, with knowledge of its lack of merit and truth and solely to discourage further resistance by Viola and her attorney to Dillard's suit, and thus was patently a willful violation of *R. R.* 4:11 which by its express terms subjects "to appropriate disciplinary action" an attorney who willfully violates that rule by filing a pleading not consistent with the representations read into his signature, "that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." A willful violation of that rule, without more, is a fraud upon the court.

 We thus cannot agree with respondent's contention and the finding of the Ethics and Grievance Committee that, at most, respondent's "manner of handling the matrimonial matter was stupid and incompetent, * * *." The majority of the court, the Chief Justice and Justices Oliphant, Wachenfeld, Burling and Brennan, find him guilty as charged of fraud upon the court in his willful violation of *R. R.* 4:11 and in the other particulars mentioned, contrary to Canons 15, 29, 30, 31, 32 and 41 of the Canons of Professional Ethics.

436

HEHER, J. (concurring in part). The Essex County Ethics and Grievance Committee found that respondent's "manner of handling the matrimonial matter was stupid and incompetent," but not fraudulent. There was a division of opinion "as to whether such stupidity and incompetence * * * were tantamount to unethical or unprofessional conduct"; and the Committee "resolved the doubt" in respondent's favor, "and determined that the charges which it preferred against him be dismissed."

The charge was a knowing and willful fraud upon the court in the institution and prosecution of the suit for divorce. I am not persuaded that respondent believed Dillard had no cause for divorce, and instituted the suit notwithstanding that belief, intending to misrepresent the facts to the court and thereby perpetrate a fraud. Although a practitioner of the law since 1927, he had had little or no experience in the field of divorce. The things he did reveal an ignorance of the rules and mode of procedure, rather than a corrupt intent to impose upon the court. There can be no doubt that Dillard related to respondent circumstances indicating the legal consequences of the void ceremony of marriage involved the statutory or common law presumption of death, arising from an absence of seven years or more. Dillard told respondent that the second ceremonial marriage was performed seven years and some two or three months after he had last heard from his wife Viola. Manifestly, the circumstances recounted by Dillard presented a case of great difficulty to respondent, one beyond his experience and competence in the particular branch of the law. But the charge in this regard is fraud, and fraud must be clearly and convincingly proved. *Pahy v. Pahy*, 107 *N. J. Eq.* 538 (*E. & A.* 1931). We do not consider the assent to the dismissal of the suit as having a contrary implication. There was nothing in that incident to suggest conscious participation by respondent in the fraudulent scheme thus laid to his client.

Yet, respondent concedes that, by the allegation in the answer to the counterclaim that the divorce suit was instituted "for the purpose of clearing the title" to the real

property, "at the behest of the Orange Land Co., who holds a certain purchase money mortgage on the said property in the amount of $4,000," he intended to deceive the defendant wife as to the amount due on the mortgage lien. He said he "knew" Viola "was after an interest in the property," and he "wanted to impress upon the attorney representing the defendant that he had very little interest in the property, that there was a $4,000 mortgage on it," and he "thought that would take the wind out of their sails." He believed "the only interest they had in the suit was to see what they could get out of it." The fact was, respondent acknowledged, that there was then "very little due" on the mortgage. This constituted an abuse of the judicial process, censurable professional conduct that merits discipline.

There is no rational basis for the suggestion made by the prosecuting counsel that respondent was "interested in the removal of any cloud on the mortgage" by his "pecuniary interest in the purchase-money mortgage," and was moved to invoke the divorce process to that end. There was no need for that. The mortgage was all but paid; and it was a purchase-money mortgage, as respondent well knew. It was Dillard who broached the subject of divorce, and his testimony establishes that this "idea" was his alone, to insure the passing of his "insurance" and property to Lillian in the event of his prior death, to the exclusion of Viola. But this bears witness to the impropriety of pleading.

The respondent hitherto has borne a good reputation. His professional conduct has been without blemish, so far as appears. It would seem that under all the circumstances the suspension of respondent from the practice of law for a period of one year, and until the further order of the court, would constitute adequate discipline.

Mr. Justice JACOBS joins in this opinion.

*For suspension for one year*—Justices HEHER, WACHENFELD, BURLING and JACOBS—4.

*For disbarment*—Chief Justice VANDERBILT, and Justices OLIPHANT and BRENNAN—3.