## IN THE MATTER OF EDWARD H. BACKES, AN ATTORNEY AND COUNSELLOR AT LAW OF NEW JERSEY.

Argued September 10, 1956—Decided September 24, 1956.

*Mr. Frederick C. Vonhof,* by direction of the court, argued for the order to show cause.

*Mr. Richard F. Green* argued in opposition to the order to show cause.

The opinion of the court was delivered by

WACHENFELD, J. This disciplinary proceeding comes to us by way of a presentment made by the Essex County Ethics and Grievance Committee. The committee report finds that the respondent (a) exacted an unconscionable fee for handling estate and mortgage transactions, contrary to Canon 12;

(b) violated Canon 6 by representing conflicting interests in transactions between the Orange Land Company, which he owned, and his client; (c) took advantage of the confidence reposed in him by his client and failed to properly and promptly account for trust moneys in his possession and commingled said moneys with his own funds, contrary to Canon 11.

Edward H. Backes was admitted to the bar in May 1927 as an attorney and in 1932 as a counsellor. In November 1954 he was suspended for a year· for fraud upon the court in procuring a client's divorce and for willful violation of *R. R.* 4–11. 16 *N. J.* 430 (1954). He was reinstated in December 1955. 19 *N. J.* 621 (1955).

Stephen W. Sutton died testate on September 2, 1949, a resident of Union County, New Jersey. After his last will and testament had been duly probated, the respondent qualified as executor of the estate and thereafter acted in such capacity and as attorney for the estate as well.

The will provided two specific bequests of $100 each for the decedent's widow, the complainant, and his sister, Mary White, and devised the premises, No. 34 Oregon Street, Vauxhall, New Jersey, to his sister, Mary White, "upon the death of my wife, Nellie Sutton," and to his widow "a life interest."

The only assets of the estate consisted of the real estate just mentioned, which, according to the inheritance tax return filed, was valued at $1,250, and a savings account in the sum of $621.97 in the Howard Savings Institution, Newark. No formal inventory or account was ever filed in the Union County Surrogate's Court.

Decedent's wife, Nelly Sutton, filed a complaint with the Ethics and Grievance Committee setting forth in part her financial transactions with the respondent and alleging she had overpaid him a certain sum of money. She said the executor closed the bank account but "made no report about the savings," asserting, "To this day I do not know about it." She wanted to know "what happened to the balance of $613 from the savings account" and "why is there a balance

due on the funeral expenses, because the money was available for these expenses?" She inquired: "Can an executor take over a savings account without giving proper information when asked?"

Mr. Backes, answering the complaint, filed with the committee an account showing a deficit of $538.78. Notwithstanding that the only liquid asset of the estate was the bank account of $621.97, he listed as paid a funeral bill of $439; a hospital bill of $90.25; two $100 legacies; witness fees and surrogate's fees, $22.25; filing fees for recording refunding bonds and releases, $6; long distance calls, $22.75; death certificates, $3; application for birth certificate and filing claim for Social Security, $77.50; executor's commission and counsel fees, $300.

The grievance committee found the respondent exacted an exorbitant fee considering the size of the estate. It computed his fee at $343.90, arrived at by deducting 5% of $621.97, as executor's commissions, from the sum of $300, and adding $75 of the $77.50 charged for "obtaining a delayed birth certificate and filing claim for Social Security." This amounts to approximately 55% of the total estate.

The respondent attempts to re-allocate these figures in such manner as to diminish the amount of the attorney's fees in relation to the value of the estate, contending the value of the real property should be included in the commission base. He relies upon *N. J. S.* 3*A*:10–3, but this statute is applicable only "When a fiduciary comes into the possession of real estate and such real estate is not sold during the administration of the estate * * *." Here, the executor never came into possession of the real estate, nor did he have any administrative duties concerning it.

When the fiduciary, under certain conditions, performs services as to realty which does not come into his possession, he may apply to the court for compensation for those services, *N. J. S.* 3*A*:10–3.2, but no such application was made in this case.

In the present circumstances, a charge equaling 55% of the total estate for the simple administration here set forth

is unconscionable and violates Canon 12. We find ourselves in accord with the presentment of the ethics committee in this respect.

Although the decedent did not want his wife to have the property in question and in his lifetime so expressed himself to the respondent and confirmed it by the provisions of his will, after his death Backes, contrary to these wishes, negotiated the sale of the reversionary interest of the decedent's sister, Mary White, to the widow for the sum of $500, thus giving her an absolute title in fee simple.

To finance this transaction, Backes arranged for Mrs. Sutton to borrow money from the Orange Land Company on a mortgage in the amount of $1,441.46, to be paid by Mrs. Sutton at the rate of $25 monthly with 6% interest. The Orange Land Company was entirely owned by the respondent, he being its only stockholder.

The closing statement shows this sum of $1,441.46 was disbursed by paying $500 to Mary White for her reversionary interest; $538.78 to pay the deficit of the estate; and $402.69 to Backes for fees and disbursements. His total charge for legal services amounted to $182.50 as follows: drawing deed, $25; drawing bond and mortgage, $25; drawing affidavit of title, $7.50; closing title, $50; negotiations leading to sale, $75. His disbursements were: title search, $150; appraisal of premises for loan, $20; telephone calls, $20.19; survey, Trenton search and tax search, $20.00; recording deed and mortgage, $10. The fees so charged equal $36\frac{1}{2}\%$ of the purchase price.

In the sale and conveyance of the real estate in question, Mrs. Sutton relied entirely upon the respondent as her attorney. She had no independent counsel nor was she advised by the respondent to obtain such at any time. Thus, Mr. Backes represented the mortgagor and was himself the mortgagee in the guise of the Orange Land Company. It is quite obvious that by so doing the respondent represented conflicting interests which proved expensive and costly to Mrs. Sutton. He thus violated Canon 6 relating to the representation of conflicting interests, and the grievance

committee, following *In re Greenberg,* 21 *N. J.* 213 (1956), was justified in its condemnation of his behavior in this regard.

As to the charge that he failed to properly and promptly account for trust funds in his possession and commingled said moneys with his own, in violation of Canon 11, the respondent pleads guilty. Although he admits the commingling of estate funds in his attorney's account and that such behavior was in violation of the canon, he naively intimates that the informality of the procedure was of some financial benefit to his client. We can see no advantage to the client in any of the transactions and are not at all astonished by the complaint made and the explanations asked for.

There is a dispute as to whether or not the $100 legacy to Mrs. Sutton was paid, but the Committee having come to no factual conclusion in reference thereto, we likewise abstain. We concur, however, in the committee's criticism leveled because of the form of the transaction.

We are in accord with the findings of the Ethics and Grievance Committee that Mr. Backes violated Canons 12, 6 and 11 and find him guilty as charged.

The respondent will be suspended from the practice of law for a period of one year and until the further order of the court.

HEHER, J. (concurring in part). I am not persuaded that in the charges made for services the respondent was guilty of moral delinquency meriting disciplinary action.

There is no clear indication of willful fraud or oppression. Resort was had to the real property to liquidate the estate; and, as pointed out by counsel, if the reasonable value of the property, set at $1,500, be considered *corpus* receipts for the purpose of fixing *corpus* commissions, the allowance claimed would not exceed 9% of the *quantum* of the estate. See *N. J. S.* 3*A*:10–3; also *N. J. S.* 3*A*:10–3.1; 3*A*:10–3.2. No formal accounting was had; and the absence of prior judicial approval does not preclude the award of reasonable

compensation for the service. There is no occasion now to determine the full extent of the right to compensation, and the reasonableness of the charges made. The controversy is cognizable and the grievance remediable by civil process. See *Bolte v. Rainville,* 138 *N. J. Eq.* 508 (*E. & A.* 1946). The issue is not one for summary disposition in a disciplinary proceeding. It suffices now to say that in the particular circumstances the service charges are not so clearly unreasonable and disproportionate as to suggest oppression or bad faith. See *In re Frankel,* 20 *N. J.* 588 (1956).

And I find no violation of *section* 6 of the *Canons of Ethics,* forbidding professional representation of conflicting interests, save by the "express consent" of "all concerned," given after a "full disclosure" of the facts. The complainant knew the respondent was providing the money to finance the transfer of the real estate; and there is no evidence of hardship, oppression, or abuse of the confidential relationship. She makes no complaint on this score.

But there was an admitted transgression of *section* 11 of the *Canons of Ethics,* barring the lawyer's commingling of trust funds with his own; yet it is not shown that this was done for respondent's own use, or that the trust funds were in fact so used. There was no loss to the estate.

It would seem that a suspension of six months would be adequate in the circumstances, if necessary at all in view of the prior suspension from practice. The transactions here under review antedated the proceeding resulting in the suspension.

OLIPHANT, J., joins in this opinion.

*For suspension for one year*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING, JACOBS and BRENNAN —5.

*For suspension for six months*—Justices HEHER and OLIPHANT—2.