80 N.J. Super. 531 (1963)
194 A.2d 357
WILLIAM B. GRUNAUER, PLAINTIFF-APPELLANT,
v.
HANNAH NURIK GRUNAUER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1963.
Decided October 14, 1963.
*533 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Harry Smith argued the cause for appellant.
Mr. J. Mortimer Rubenstein argued the cause for respondent.
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff's supplemental complaint seeks the invalidation of a judgment of divorce secured by defendant against him in Nevada on the ground that she was not a bona fide resident of Nevada, but rather of New Jersey, when it was entered. The trial court entered a judgment of dismissal on the motion of the defendant at the conclusion of the plaintiff's case.
The following facts were proven or stipulated at the hearing. The parties, both of whom were lifelong residents of New Jersey theretofore, married June 7, 1959 at West Orange. They went to live at 89-11 Church St., Paterson. After 11 weeks of cohabitation defendant left plaintiff and shortly thereafter instituted a suit for annulment against him in the Chancery Division predicated on his alleged misrepresentation to her of his religious faith. On October 26, 1961 defendant voluntarily consented to, and there was entered of record, a judgment of dismissal of her annulment action with prejudice, her attorney having advised her, as he tells us, that her complaint therein was devoid of legal merit.
On November 8, 1961 defendant left New Jersey for Nevada. Immediately prior thereto she was residing with her mother at 437 East 33rd Street in Paterson. On November 24, 1961 defendant wrote to plaintiff as follows:
*534 "Dear Bill, Nearly twenty-seven months have gone by since we separated and you have done nothing to end our legal ties. I have taken up residence in Nevada and am very happy here. If it is all right with you, my attorney will send you papers and forms for you to sign and return to him. I will assume all the legal fees if there is no contest. You will avoid all the local publicity this way. Please let me know if this is agreeable with you. Hoping to hear from you shortly, Hannah."
On November 27, 1961 plaintiff responded to the foregoing letter as follows:
"Dear Hannah: I received your note. In replying to the same, feel that you have treated me wrongly. You were advised by several lawyers that you had no cause of action against me, and that I had done nothing wrong. Further, there was no basis for a suit for divorce anywhere. The last time I discussed this matter was with a lawyer by the name of Saltzman. And I told him what I am telling you. That I am not going to consent to any divorce. I don't know who advised you to go to Reno, but I am going to contest your right to a divorce in Nevada. As far as any publicity is concerned, I am in the right and if there is any bad publicity, it will be directed toward you. This is the way I feel and I want you to know it now before you spend anymore money foolishly. Sincerely, Bill."
About February 15, 1962 plaintiff was served by mail in New Jersey with a summons issued out of a Nevada court, with complaint annexed, at the instance of defendant herein as complainant, seeking a divorce on grounds of mental cruelty and an annulment for misrepresentation of religious faith. The Nevada complaint recites that the plaintiff wife has for more than six weeks previously resided in Washoe County, Nevada "with the bona fide intent to make Nevada her home for an indefinite period of time."
Plaintiff did not appear in the Nevada action but filed a complaint in the Superior Court of this State attacking the Nevada proceedings as fraudulent, and on February 28, 1962 he obtained an order to show cause, including a restraint against defendant's further prosecution of the Nevada suit, made returnable April 13, 1962. The defendant wife was served with this order and complaint by mail in Nevada. She failed to appear in the New Jersey action, and an order was entered therein April 26, 1962 permanently restraining her. *535 In the meantime, however, a final judgment of divorce was granted the wife in the Nevada action by default on April 3, 1962, the count for annulment therein having been abandoned. Among other things, the Nevada judgment finds the plaintiff therein (defendant here) to be a bona fide resident of Nevada and to have so been for a period of more than six weeks preceding institution of the action. Later plaintiff filed a supplemental complaint demanding invalidation of the Nevada judgment.
Plaintiff testified that on June 26, 1962 he saw defendant at the East 33rd Street Paterson residence of her mother, where she had been residing prior to going to Nevada. Since then he saw her again on occasions in that vicinity. It was also proven that defendant was employed in Paterson from August 20, 1962 to October 17, 1962, and that as of the time of the hearing  December 12, 1962  she was employed by a firm in Pine Brook.
In granting defendant's motion for dismissal at the conclusion of plaintiff's proofs, the trial judge held that full faith and credit must be accorded the Nevada judgment and that "everything that has been adduced in this court seems to indicate that she [defendant] intended to make Nevada her residence." It was ruled that plaintiff had not "proven the fraud by clear and convincing evidence."
We have concluded that the trial court erred, upon the foregoing showing, in not requiring the defendant to come forward with evidence bearing on the question of her intent to remain in Nevada permanently or indefinitely when she established her residence there before deciding the issue projected by the supplemental complaint and proofs.
Two preliminary legal considerations are influential in our determination. The first is that on a motion to dismiss a complaint at the conclusion of the plaintiff's case, the plaintiff is ordinarily entitled to the benefit of all legitimate inferences derivable from the proofs. But see R.R. 4:42-2(b). The second, and here more significant, is that in all marital litigation involving parties whose matrimonial situs was in *536 this State, the court regards the State as a third party, interested in the maintenance of the marital relationship. In re Backes, 16 N.J. 430, 433-434 (1954). True, that interest will not justify disregard of the recognition to which foreign decrees of divorce are entitled by virtue of the full faith and credit clause of the Federal Constitution; see Schlemm v. Schlemm, 31 N.J. 557 (1960). However, the absence of in personam jurisdiction of the Nevada court over the plaintiff husband leaves the Nevada judgment with only a rebuttable presumption of validity, which can be overcome in our courts by clear and convincing evidence of the absence of a bona fide domicile in Nevada of the spouse who invoked the jurisdiction of its courts. Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951); Zieper v. Zieper, 14 N.J. 551, 559 (1954). Thus, in appraising the present plaintiff's effort to show that his wife did not become a bona fide resident of Nevada in the sense of having gone there with the intention to remain a resident there "permanently or indefinitely" and "not to return" to New Jersey as a resident, see Peff v. Peff, 2 N.J. 513, 521 (1949); Gosschalk v. Gosschalk, 48 N.J. Super. 566, 573 (App. Div. 1958), affirmed o.b. 28 N.J. 73 (1958), the trial court was obliged to give heed to the considerations both that plaintiff's showing must clearly and convincingly refute the presumption of the bona fides of the defendant's adjudicated Nevada residence and that the State of New Jersey had an interest in preventing a dissolution of this marriage by the fraud of the defendant wife.
In the circumstances here manifested, we are satisfied that a proper exercise of judicial discretion conformable with the guidelines mentioned above called for requiring the defendant wife to come forward with her proofs to meet plaintiff's case. When plaintiff had completed his proofs, the court was confronted with the factual picture of a wife, lifelong resident of New Jersey, who had gone to Nevada immediately after voluntary dismissal of her meritless annulment action *537 here against the husband, had written to him asking his consent to a Nevada divorce on no basis of justification other than a 27-month separation, had been refused the request on the ground that he "had done nothing wrong," and had thereupon filed for divorce nevertheless and procured a Nevada judgment April 3, 1962 for mental cruelty, ignoring a New Jersey court restraint in the process. Moreover, less than three months thereafter, she had apparently resumed living with her mother in Paterson and soon thereafter was at work for a New Jersey employer.
Certainly the full faith and credit clause and the conceded consequent burden resting on the attacker of a foreign divorce judgment to adduce clear and convincing evidence of lack of foreign domicile of the suitor there do not mean that the court of the forum is bereft of its ordinary judicial capacity and duty to draw factual inferences warranted by common sense and common experience. In all of the comparable cases cited by defendant sustaining the foreign judgment both sides were heard and there was independent factual probative support of the presumptive hypothesis that the migratory divorcing party intended to reside in the foreign jurisdiction permanently or indefinitely. See, e.g., Peff v. Peff, supra; Zieper v. Zieper, supra; Brown v. Brown, 28 N.J. Super. 165 (App. Div. 1953). In the present case, by contrast, at the stage the proofs had reached when the case was dismissed, the presumption of the bona fides of defendant's Nevada domicile had not an iota of independent factual support in respect of the essential prerequisite thesis that defendant had removed her residence to Nevada with the intention of remaining there permanently or indefinitely, aside from the self-serving statement in her letter to plaintiff. Cf. Bajkynicz v. Bajkynicz, 5 A.D.2d 562, 173 N.Y.S.2d 777 (App. Div. 1958); Mincy v. Mincy, 20 Misc.2d 1035, 189 N.Y.S.2d 788 (Sup. Ct. 1959); Juneau v. Juneau, 227 La. 921, 80 So.2d 864 (Sup. Ct. 1955). The surrounding circumstances, taken in totality, were strongly indicative of the contrary. See Rice v. Rice, 134 Conn. 440, 58 A.2d 523 *538 (Sup. Ct. Err. 1948), affirmed 336 U.S. 674, 69 S.Ct. 751, 93 L.Ed. 957 (1949).
Of course, an entirely different conclusion may or may not be warranted after defendant submits her proofs
Reversed and remanded for a new trial.