98 N.J. Super. 366 (1968)
237 A.2d 495
MARGARET BLACK, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF VERGES N. BLACK, A/K/A DAVID V. BLACK, A/K/A VIRGIL BLACK, PLAINTIFF-APPELLANT,
v.
PUBLIC SERVICE ELECTRIC & GAS CO., A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1967.
Decided January 11, 1968.
*369 Before Judges KILKENNY, CARTON and HORN.
Mr. John M. Blume for appellant (Messrs. Blume and Kalb, attorneys).
Mr. Luke A. Kiernan, Jr. for respondent (Mr. Herman H. Wille, Jr., of counsel).
HORN, J.S.C. (temporarily assigned).
Plaintiff, administratrix ad prosequendum of the estate of Verges N. Black, appeals from an involuntary dismissal of her action after the completion of her case. The trial judge granted said motion upon his finding that upon the facts and the law plaintiff had shown no right to relief. R.R. 4:42-2(b).
*370 Plaintiff sought damages under the Wrongful Death Act, N.J.S. 2A:31-1 et seq., alleging that her intestate, Verges N. Black (Black), met his death as a result of defendant's negligence on March 18, 1965. His death admittedly came about when a crane with which he was working came in contact with a high voltage line.
Black had been employed as a laborer for some years before his death by Central Construction Co. (Central), a general contractor. At the time of the accident, and for about six or seven weeks before, Central had been engaged in installing sewage pipe underground for the City of Rahway.
The accident occurred close by a wooden pole bearing high voltage lines owned and maintained by defendant on the east side of Route 1 at approximately its intersection with Lincoln Avenue. Lincoln Avenue was laid out on the municipal map but was not as yet open to traffic.
Route 1 is a main artery of traffic containing three lanes on each side of an elevated medial strip. For a long time defendant had maintained a line of poles bearing high voltage lines along the westerly side thereof. A line led from one of these poles on the west side directly across the highway to the aforementioned pole on the east side close to where the accident occurred. The pole on the west side was partially supported by guy wires anchored in the ground.
Central's equipment and approximately 15 to 20 of its men had been working on the west side of Route 1 from about the end of January 1965 or early February 1965 to March 18, 1965. The equipment included a bulldozer, a back hoe and a large crane with a boom that extended a distance higher than the lines strung on the poles. Before March 18 Central's crew had excavated a pit on each side of the highway at Lincoln Avenue, respectively 10 to 15 feet deep, about 20 feet long and about 8 feet wide. A subcontractor then dug a tunnel beneath the highway between the two pits and placed the excavated material in them.
*371 The crane had been in the area of the tunnel on the west side of Route 1 for a "couple of weeks" before the date of the accident, March 18, 1965. Sometime before March 18 defendant, at the request of Central, had moved a guy wire attached to the above-mentioned pole on the west side of Route 1 because it interfered with the work that was being done.
About one-half hour before the accident the operator had moved the crane to the east side close to the place of the accident. The crane operator with his crew, consisting of Black and another employee, Michael Podolsky, were engaged in lining up pipes and rails preparatory to installation in the tunnel. Black and Podolsky hooked up a section of pipe to the cable attached to the boom. The crane was raising it when apparently some part of the boom or cable touched one of the high voltage lines. Black died as a result.
Plaintiff's primary theory of liability was that defendant had knowledge of the work being performed in the vicinity of its high voltage lines and negligently failed to take any precautions to protect against injury to the workmen. She also advanced a theory based on alleged failure to comply with the provisions of the National Electric Safety Code with respect to warning signs and inspection and maintenance of the high voltage wires.
The trial judge dismissed the action at the conclusion of plaintiff's case in reliance upon his conception of the holding in Manning v. Public Service Elec. & Gas Co., 58 N.J. Super. 386 (App. Div. 1959). He found "that the defendant utility company had no knowledge that work was being performed in the immediate vicinity of the high-tension wire until after the accident occurred." He further held there was no proof of a violation of the National Electric Safety Code, notwithstanding the expert opinion of one of plaintiff's witnesses. In this he followed Manning in holding that the interpretation of this code was the function of the court.
We agree that there was no proof of a violation of the National Electric Safety Code. Accordingly, this question *372 was properly removed from the case as a theory of liability.
We turn now to the issue of defendant's alleged negligence in failing to take necessary precautions against injury to the men working near its power lines.
Although ordinarily the adoption and operation of a method which accords with that in general use by well-regulated companies satisfies the duty of care owed, nevertheless the care which must be exercised over the construction and maintenance of a highly destructive agency requires more than the use of mere mechanical skill and approved mechanical appliances. It includes also circumspection and foresight with regard to reasonably probable contingencies. The test of liability is whether, under the particular circumstances, the injury ought reasonably to have been anticipated. Manning, supra.
An electric utility company has been held to be negligent in failing to install or maintain its high voltage facilities in a safe and proper manner where injury resulted from inherent defects in construction or maintenance. Hoyt v. Public Service Electric & Gas Co., 117 N.J.L. 106 (E. & A. 1936) (placement of transformer with unfastened strap irons on cross-arm of pole and planting the pole on an angle sloping toward the roadway); McGinnis v. Delaware L. & W.R.R. Co., 98 N.J.L. 160 (E. & A. 1922) (erection of wire across public highway without proper insulation); Barnett v. Atlantic City Electric Co., 87 N.J.L. 29 (Sup. Ct. 1915) (improper insulation of wires in public place and failure to inspect for the discovery of defects); Guinn v. Delaware & Atl. Telephone Co., 72 N.J.L. 276 (E. & A. 1905) (maintenance of guy wire in such a position that it was likely to and did become crossed with an electric wire and charged with a deadly electric current); Brooks v. Consolidated Gas Co., 70 N.J.L. 211 (E. & A. 1904) (placement of electric converter and wires on the side of a dwelling house near a balcony, and the failure to use more effective insulation).
*373 Liability has also been imposed where the facilities themselves were properly and safely constructed in accordance with the general practice of well-regulated companies, but where the utility failed to exercise care commensurate with later-developing circumstances. In these cases circumspection and foresight dictated additional precaution. Beck v. Monmouth Lumber Co., 137 N.J.L. 268 (E. & A. 1948) (representative of electric company saw crane being used on premises where they placed electric wires, and should have acted to avoid resulting dangerous condition); Adams v. Atlantic City Electric Co., 120 N.J.L. 357 (E. & A. 1938) (employee of defendant knew of trouble along power line and should have refrained from transmitting electrical energy without unreasonable delay to safeguard persons on highway); Heyer v. Jersey Central Power & Light Co., 106 N.J.L. 211 (E. & A. 1929) (placement of high tension line five feet from known building construction site with knowledge that an electric current of the voltage carried would jump four feet and further on a damp day).
No matter what length of time a pole line or other facilities carrying deadly currents of electricity have been in use without causing injury, if the occurrence or presence of extraneous circumstances come to, or should come to, the knowledge of the utility and these circumstances are such that reasonable prudence, circumspection and foresight would dictate additional precautions to prevent injury, the failure to act may result in liability.
Care, watchfulness, caution and foresight for harm are all measured by the dangers to those who are exposed to the wires, poles and other equipment under the control of the company. This applies both to knowledge of the dangers by the company and to the care, skill, diligence and watchfulness of its agents. 1 Stevenson, Law of Negligence in the Atlantic States, § 211, p. 336 (1954).
The question, therefore, is whether defendant has met the requisite standard of care in this case. Specifically, the *374 inquiry is whether plaintiff's death was reasonably foreseeable by the defendant under the circumstances.
The court below relied particularly on the following statement in Manning:
"* * * by legislative enactment (N.J.S.A. 34:6-47.5) any notion of the obligation of a power company to foresee the performance of work of the kind here involved is dispelled, absent proof of actual knowledge in the power company that such work was to be undertaken." (58 N.J. Super., at p. 396, emphasis supplied)
This statement must be read in the context of the factual setting in Manning. Plaintiff there sought to impose liability solely on the theory that the defendant utility was obliged to anticipate that at some indefinite time work would have to be performed on a building, and that workmen so employed might be injured because of the proximity of high voltage wires despite the fact that the wires were not negligently located or installed. No notice of any kind had been given to the defendant-utility of the repair work being done. The court held that under these circumstances the injury was not reasonably foreseeable. Conversely, it assumed liability might properly have been imposed had the utility had notice that the work was actually being performed at that site.
The attempt to fasten liability in Manning was predicated on the thesis that defendant should have anticipated at the time it constructed its facilities that someone might be injured at some indefinite time in the future when the exterior of the building was being repaired. To impose such a duty of circumspection and foresight would obviously be unreasonable. It would make a utility virtually an insurer, contrary to the established law of this State that utilities are not insurers. Their liability is grounded on the failure to exercise due care. See Manning, supra, 58 N.J. Super., at p. 386; Beck, supra, 137 N.J.L., at p. 268; Adams, supra, 120 N.J.L., at p. 357.
*375 In Manning, as we have observed, the court assumes that actual knowledge on the part of the utility would render it liable. Actual knowledge means "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." 39 Am. Jur., Notice, § 4. There are two kinds of actual knowledge, viz., "express," which refers to direct information, and "implied," which means knowledge based on other known facts that would inform a reasonably prudent person of the ultimate fact. See 66 C.J.S. Notice §§ 4-5. Constructive notice, on the other hand, is a legal inference or presumption; it is "a fiction by which, for the promotion of sound policy or purpose, the legal rights and interests of the parties are treated as though they had actual notice or knowledge." 66 C.J.S. Notice § 6.
It seems clear that the court in Manning contemplated implied actual knowledge as well as express actual knowledge when it held that actual knowledge would be required as to foreseeability if N.J.S.A. 34:6-47.5 were not complied with.
Plaintiff's proofs tended to show the following: that a guy wire on the pole directly across Route 1 had been moved by defendant's employees at the request of Central while the crane was in the vicinity; that all or some of the high voltage lines on this pole were also attached to the pole on the east side close to the scene of the accident; that the irregular surface of the shoulders of Route 1 around each pole showed signs of work on both sides; that a tunnel had been constructed beneath the highway at that location; and that the crane was in the vicinity during these conditions. At oral argument counsel for defendant frankly admitted that the movement of the guy wire was done by linemen fully familiar with the fact that the lines on the poles were highly energized. It can be deduced from this that a crew of defendant's employees, including linemen and other members *376 of such work crews, had performed this work probably under the supervision of a line supervisor or foreman.
In ruling on defendant's motion for an involuntary dismissal, the trial judge was obliged to view plaintiff's evidence as true, and draw therefrom every legitimate inference of fact favorable to her. Sanzari v. Rosenfeld, 34 N.J. 128 (1961); Grunauer v. Grunauer, 80 N.J. Super. 531 (App. Div. 1963). He was obliged to deny the motion unless it could be said that reasonable men might not honestly differ, and that no reasonable person would find that defendant should have acted to avoid or remedy the dangerous condition resulting from the performance of the work herein involved. Hindle v. Morrison Steel Co., 92 N.J. Super. 75 (App. Div. 1966).
Reasonable men might find from the proofs that defendant had actual knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts. They might find in view thereof that reasonable circumspection and foresight dictated the taking of reasonable precautions to prevent injury.
In Pike v. Consolidated Edison Co., 303 N.Y. 1, 99 N.E.2d 885 (Ct. App. 1951), revising 277 App. Div. 1120, 100 N.Y.S.2d 892 (App. Div. 1951), defendant received copies of official plans for construction and one of its representatives observed the completed installation of footings at the site, and the company should have foreseen the common usage of cranes and booms in the erection of the building and should have acted to avoid the resulting dangerous condition.
In Rome R. & Light Co. v. Jones, 37 Ga. App. 244, 139 S.E. 579 (App. Ct. 1927), defendant knew of the use of a derrick in the vicinity of its wires and the person in charge of the construction had promised to notify defendant of any changed condition which would render the proximity of defendant's wires dangerous to workmen, and defendant should have anticipated that this additional notice might not *377 be given by the person in charge, and that the conditions under which the derrick was operated might be changed and rendered more hazardous without notice to defendant.
The contention of defendant that it should not be required to anticipate injury on the east side of the highway because the crane had been moved from the west side only one-half hour before the accident is without merit. As stated, the facts tend sufficiently to show connected work on both sides of the highway. Furthermore, it is not necessary that a tortfeasor anticipate or reasonably foresee the exact happening of the accident in the precise manner in which it occurred. The foreseeability extends only to anticipate that some harm might occur. Mayer v. Housing Authority of Jersey City, 84 N.J. Super. 411 (App. Div. 1964), affirmed o.b. 44 N.J. 567 (1965).
Accordingly, the judgment entered below in favor of defendant is reversed and the case is remanded for a new trial in accordance herewith.
Reversed. Costs to abide final judgment.