288 A.2d 485.

REV. VARTAN HARTUNIAN *et ux. vs.* GEORGE E. MATTESON, *Building Inspector of the Town of Coventry et al.*

FEBRUARY 28, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This petition for a writ of certiorari was brought to review the action of a Superior Court justice in granting a preliminary injunction enjoining a stop-work order issued by the respondent building inspector.

The petition, together with the motion for leave to file the same, and an accompanying memorandum of law, were filed on June 2, 1971, in accordance with the requirements of Provisional Order No. 3 of the Rules of the Rhode Island Supreme Court.

It appears from the petition that petitioners, Vernon H. and Jacqueline C. Hardy,[1] are the owners of a tract of land in the town of Coventry, designated as lot 150 on assessor's plat 45 which lot abuts lot 151 on said assessor's plat.

---

[1]It should be noted as a matter of form that the town joined in the Hardys' petition notwithstanding that the latter included the building inspector as a nominal party respondent in the instant proceedings.

It further appears that said lot 151 is owned by Rev. Vartan Hartunian and his wife, Grace D. Hartunian, plaintiffs in the civil action herein reviewed. Both lots 150 and 151 are located in a rural residential district. Continuing, it also appears that on March 15, 1971, the town of Coventry building inspector issued three building permits to Hickory Ridge Campground, Inc., as owner of said lot 151.[2] Further these permits were issued on the application of Franklin C. Reed as builder.

Although not specifically so stated, it is undisputed that said permits were sought and obtained for the planned construction of 200 campsites which, petitioners allege, are not a permitted use in a district zoned rural residential.

The petitioners further allege that they had no knowledge of the issuance of the building permits until May 10, 1971, some 56 days after they had been issued. The following day, however, namely May 11, 1971, they filed an appeal from the issuance thereof with the building inspector and the zoning board of review pursuant to the provisions of art. VI, sec. 5(a) of the Zoning Ordinance of the Town of Coventry.[3]

It further appears from the petition that on May 17, 1971, the Hartunians, as owners of lot 151 to which the building permits applied, filed a complaint in the Superior Court praying that the building inspector, as defendant, "* * * be enjoined and restrained from interfering with the construction of buildings covered by the building permits

---

[2]The name of Hickory Ridge Campground, Inc. is that by which the Hartunians planned to construct and operate a campsite.

[3]An examination of that section, a copy of which is made part of the petition, discloses that the filing of an appeal is authorized within 30 days and that the filing of such an appeal carries an automatic stay of the work for which a permit is granted, unless otherwise specifically ordered by the building inspector. See Appendix A.

It is not disputed that no such specific order was made by the building inspector in connection with the Hardys' appeal.

as long as said buildings are constructed in accordance with the Building Code of the Town of Coventry."

With the filing of said complaint, an *ex parte* restraining order was entered and the case set down for hearing on May 21, 1971. It was heard on that date, and on May 27, 1971, a judgment was entered granting the prayer for a preliminary injunction, adding the Hardys, petitioners here, as parties defendant and giving them 20 days in which to answer.

Meanwhile, pursuant to the restraining order entered May 17, 1971, work was resumed on lot 151 and, according to petitioners' allegations, would continue unless relief were afforded by this court. Wherefore they prayed that a writ of certiorari issue to review the action of the Superior Court justice and quash the judgment entered on May 27, 1971, for the reason that the Superior Court justice had acted without or in excess of his jurisdiction. They also prayed that the Hartunians, d/b/a Hickory Ridge Campground, Inc., be enjoined from doing any further work pending consideration of their motion for leave to file a petition for the writ.

We granted this latter prayer, and two days later, namely June 4, 1971, entered an order clarifying and continuing the stay entered two days previously.

The record establishes that along with their petition, motion for leave to file the same, and written memorandum of law, petitioners filed an affidavit as required by said Provisional Order No. 3 of the Rules of the Rhode Island Supreme Court, stating that they had furnished respondents with copies of said pleadings and given notice of their pendency as also required by said Provisional Order.

In their written objection to petitioners' motion, respondents relied principally on the proposition that since petitioners had an adequate remedy at law by way of an appeal from the judgment granting a preliminary injunc-

tion, this court should not exercise its discretion so as to afford petitioners a review of that judgment by way of certiorari. They supported their objection by referring our attention to several Rhode Island cases in which this court had denied certiorari for the reason that the there petitioners for the writ had an adequate remedy at law.

However, since with the issuance of the *ex parte* restraining order of May 17, 1971, construction of the campsites had been resumed, and by virtue of the preliminary injunction would unquestionably continue, it seemed to this court that the validity of the Superior Court justice's assumption of jurisdiction should be considered as expeditiously as possible. Having reached this conclusion, review by way of certiorari appeared clearly preferable.

Our motivation in this regard was influenced in no small measure by the fact that the Coventry Town Solicitor joined in the petition on behalf of the town. This circumstance clearly indicated that if the Hardys' appeal to the board of review was determined not to have been taken within a reasonable time, thus precluding the board from passing on the merits of their appeal, this latter question, namely, are the proposed campsites a permitted use, would be the subject of subsequent litigation initiated by the town solicitor on the authority of G. L. 1956 (1970 Reenactment) §45-24-7. See Appendix B. *See also Town of Lincoln v. Cournoyer,* 95 R. I. 280, 186 A.2d 728 (1962).

So viewed, it would hardly be in the interest of the Hartunians to go to considerable expense on the strength of the preliminary injunction and to have that judgment reversed on appeal. Neither would it be just to the petitioners to insist that they prosecute such an appeal when the threshold question was jurisdictional in character.

Clearly then in the peculiar circumstances of this case and in the interest of the courts, as well as those of all parties, the most expeditious disposition of the rights of

the parties would be best achieved by granting petitioners' motion for leave to file their petition.

Consequently we granted said motion on June 25, 1971, and ordered the writ to issue. So doing, we continued the stay of June 4, 1971, and moreover, preserved the rights of the Hartunians to further argue orally and in their brief the question of whether recourse to certiorari should be permitted.[4] *Hartunian v. Matteson,* 108 R. I. 938, 278 A.2d 867 (1971).

Thereafter, as mandated by the writ, the clerk of the Superior Court for Kent County duly certified to this court the record of the equity action brought by the Hartunians against Matteson as building inspector. The factual background and travel of that case have been heretofore substantially delineated and need not be repeated.

However, the certified record discloses additionally that in his answer to the Hartunian complaint, defendant Matteson pleaded, *inter alia,* two significant defenses. These are:

### "THIRD DEFENSE

1. Plaintiffs have failed to exhaust their administrative remedies under the Zoning Ordinance of the Town of Coventry."

### "FOURTH DEFENSE

1. The appeal filed by Vernon H. Hardy and wife, Jacqueline Hardy of Victory Highway, Coventry,

[4]On August 4, 1971, private counsel entered his appearance for the building inspector who, at least as to form, had been treated in the petition as a party respondent.

With the filing of the building inspector's brief, however, it became apparent that the building inspector's position was not adverse to that of petitioners on the issue of the appeal from him to the zoning board of review. On reflection of this, and of the position taken in its brief by the town as a petitioner for the writ, we concluded that there was no compelling reason for reservations regarding the appropriateness of certiorari.

Further, although having no significance other than to complete the record, we entered an order on August 13, 1971, permitting Harold Sheldon et ux. and Lloyd A. Phillips, Jr. et ux. also abutting owners, to intervene as petitioners.

Rhode Island was filed within a reasonable time as specified by the General Laws of Rhode Island, they having no actual knowledge of the issuance of the Building Permits until May 10, 1971."

This brings us to a consideration of the contentions advanced by petitioners in support of their petition. It is their position here, as it was of the building inspector in the Superior Court, that the justice of that court who tried the case lacked jurisdiction to hear the Hartunian complaint, or in the alternative, that he acted in excess of his jurisdiction in granting the preliminary injunction. They based this on the proposition that the Hartunians had failed to exhaust the administrative remedy provided by §45-24-16 (Appendix C), §45-24-17 (Appendix D), and art. VI, sec. 5(a) of the ordinance. (See Appendix A).

It is also their position that, in any event, the Superior Court justice erred in holding that the appeal from the building inspector to the zoning board was not timely, hence void.

It should be noted at the outset that art. VI, sec. 5(a) of the zoning ordinance was purportedly adopted by the Coventry town council on the authority of §§45-24-16 and 45-24-17. However, §45-24-16 independently provides for an appeal by an aggrieved person taken "within a reasonable time as provided by the rules of the board," whereas art. VI, sec. 5(a) of the ordinance purports to confine "a reasonable time" to 30 days.

Further, §45-24-17, independent of art. VI, sec. 5(a) provides for an automatic stay of the building inspector's decision once an appeal is taken. Indeed, except for the aforesaid limitation of 30 days, as well as phraseology not material here, art. VI, sec. 5(a) is a restatement of said §§45-24-16 and 45-24-17.

However, the purported confining of a reasonable time to 30 days by the ordinance is of significant materiality. It is well settled that rights prescribed by the enabling

act are derived from said act and the repetition thereof in a zoning ordinance is mere surplusage. Moreover, when an ordinance sets out to restate that for which provision is made in the enabling act, any purported expansion or abridgment by the zoning ordinance of rights granted by the enabling act is ultra vires of the jurisdiction conferred on the municipal legislature by the General Assembly, hence void. *Coderre* v. *Zoning Board of Review*, 102 R. I. 327, 230 A.2d 247 (1967); *Lincourt* v. *Zoning Board of Review*, 98 R. I. 305, 201 A.2d 482 (1964); *Mello* v. *Board of Review*, 94 R. I. 43, 177 A.2d 533 (1962).

Keeping this principle in mind, we note that the requirement that the Hardys were obligated to claim their appeal from the building inspector within 30 days, construed by the Superior Court justice as meaning within 30 days of the issuance of the building permits, is contained within art. VI, sec. 5(a) of the Coventry zoning ordinance.

However, §45-24-16 (Appendix C) confers jurisdiction to determine what constitutes a reasonable time on boards of review. To effectuate this, said section authorizes the boards of review, and not municipal legislators, to adopt rules and regulations.

It appears, however, that the Coventry zoning board of review had not adopted rules and regulations defining a reasonable time so that appeals to it would be decided by the particular facts of each case. *See Elmcrest Realty Co.* v. *Zoning Board of Review*, 78 R. I. 432, 82 A.2d 846 (1951).

Manifestly then, the timeliness and the merits of the Hardys' appeal from the building inspector's issuance of the building permits are determinable by the board of review under §45-24-16, and not subject to any purported limitation of art. VI, sec. 5(a). Furthermore, work to be undertaken on the authority of the building permits issued was automatically stayed pending the outcome of the ap-

peal by virtue of the provisions of §45-24-17, unless, as provided by said section, the building inspector had certified to the board of review that a stay would cause imminent peril to life or property. Had he done this, the Hartunians could have continued work under their permits and it would have been for the Hardys to obtain a stay either from the board of review or a court of competent jurisdiction. It is undisputed, however, that no such certification was made by the building inspector.

It is in light of all these circumstances then that we consider petitioners' contention that the Hartunians were not entitled to the relief granted by the Superior Court justice, in that they had not exhausted their administrative remedy.

It is elementary that petitioners Hardy on learning of the issuance of the building permits and claiming to be aggrieved thereby, could not by-pass the administrative remedy provided by the General Assembly and seek equitable relief in the courts. *New England Tel. & Tel. Co.* v. *Kennelly*, 75 R. I. 422, 67 A.2d 705 (1949).

The question here, however, presents the other side of the coin, namely, with the taking of the appeal by the Hardys, could the Hartunians circumvent the administrative procedure set in motion by the Hardys' appeal by obtaining injunctive relief in the courts? We think not.

No case in point has been called to our attention, but from our independent research, we think it clear that the jurisdiction of the board of review to pass on both the timeliness of the Hardys' appeal and the merits thereof, was as binding on the Hartunians as it was on the Hardys. In *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), a marine and shipbuilders' local complained to the National Labor Relations Board that the Bethlehem Shipbuilding Corporation was engaging in unfair labor practices in its shipbuilding yard

in Quincy, Massachusetts. This complaint was made pursuant to the provisions of the National Labor Relations Act and, in accordance with the jurisdiction vested in it by the Congress, the National Labor Relations Board notified Bethlehem of the complaint and of a hearing to be held thereon by the board.

Bethlehem, seeking to circumvent such hearing essentially on the ground that its Quincy shipyard was not involved in interstate commerce, as required by the National Labor Relations Act, filed a complaint in the Federal District Court for the District of Massachusetts where it obtained a preliminary injunction. An appeal to the Circuit Court of the First District was denied, and from that judgment the case went to the United States Supreme Court by way of certiorari. There, the injunction was dissolved, the court holding, in effect, that if the decision of the board after a hearing was adverse to Bethlehem, the Congress had provided Bethlehem with the right of judicial review in the Circuit Court of Appeals. It further held that judicial relief, which had the effect of circumventing the right of the board to hear the complaint, was an improvident exercise of the judicial power.

Here, the General Assembly has vested original jurisdiction to determine the timeliness and merits of the Hardys' appeal in the board of review and provided the Hartunians with a right to judicial review of the board's decision should the Hartunians be aggrieved thereby. Section 45-24-20.

Furthermore, §45-24-17, although providing that with the taking of an appeal from the issuance of the permits by the building inspector, an automatic stay ensued, also provides for an administrative remedy whereby such stay might be forestalled. Specifically, the Hartunians could have requested the building inspector to certify to the board of review that "a stay would in his opinion cause

imminent peril to life or property." Whether the building inspector would have so certified is beside the point.

The fact is that in lieu of making such a request, the Hartunians sought judicial injunctive relief, thereby attempting to circumvent the administrative remedy provided by the General Assembly.

We think therefore that there is merit to the contention that the Hartunians should not have been accorded judicial relief. So concluding, we hold that the preliminary injunction resulted from an improvident exercise of the Superior Court justice's jurisdiction and the judgment entered should be quashed.

The consequence of this holding is twofold: first, it establishes that the appeal of the Hardys from the issuance of the building permits is now in order for a hearing by the zoning board of review under §45-24-16 and in accordance with the procedures set forth in §45-24-18.

This appeal moreover raises for the board's consideration the threshold question of whether it was claimed within a reasonable time. As heretofore pointed out, the provision of art. VI, sec. 5(a) of the Coventry ordinance relative to the time in which appeals may be taken is not a rule or regulation adopted by the board, hence inapplicable. *Lincourt* v. *Zoning Board of Review, supra.*

The second consequence of our holding that the Superior Court justice's exercising jurisdiction was improvident is that, technically speaking, we do not reach the merits of his decision as to what constitutes a reasonable time. Were we to confine our consideration to that which is technically before us there would be no necessity to consider petitioners' second contention, namely, that the Superior Court justice erred in holding that the Hardys were obligated to claim their appeal within 30 days of the issuance of the building permits.

However, our decision to hear the instant petition ad-

mittedly represents a liberal exercise of the court's discretion. We were so motivated primarily because the root question, it is only reasonable to assume, would, in any event, be the subject of protracted litigation. Therefore, the most expeditious method of resolving all questions would serve the interest of the judicial process. In this spirit we deem it advisable to discuss the question involved in petitioners' second contention.

An examination of the Superior Court justice's decision fails to disclose any cited authority relied on by him for the proposition that "within 30 days" is to be measured from the time at which the permits were issued. However, in their oral argument and brief, the Hartunians argue that this court expressly held in *Bertrand* v. *Zoning Board of Review*, 99 R. I. 329, 207 A.2d 604 (1965); *MacGregor* v. *Zoning Board of Review*, 94 R. I. 362, 180 A.2d 811 (1962) and *Nolfi* v. *Zoning Board of Review*, 91 R. I. 444, 164 A.2d 695 (1960), that the "30 days" requirement peculiar to those cases meant 30 days from the decision of the building inspector even though not stated in the regulation.

Acknowledging this to be so, we have concluded that this phase of our holdings in the cited cases should be reexamined in light of questions raised in the instant proceedings which were not raised in the cited cases.

At the outset, we note that the "within 30 days" limitation in both *MacGregor* and *Bertrand* was contained in the zoning ordinance and was not a rule or regulation adopted by the zoning board of review. This point was not brought to the attention of the court in those cases and for that reason not considered.

In *Nolfi*, the "30 day" limitation had been adopted by the board of review as its regulation, hence binding on the board, if it be assumed that the board of review, in the exercise of its legislatively conferred authority to adopt

rules and regulations, could validly adopt a regulation that would have the effect of prejudging what would constitute a reasonable time in all cases. This question of prejudging, although not present here because the regulation is contained in the ordinance, is one regarding which we have serious misgivings.

Obviously, one allegedly aggrieved by the decision of a building inspector who has neither actual knowledge of that decision nor who, under the circumstances of a given case could be reasonably charged with such knowledge, within 30 days thereof is, for all practical purposes, denied the right of appeal provided by §45-24-16, if he is bound by a regulation of the board that an appeal must be taken within 30 days of the decision.

Thus in *Pansa* v. *Damiano*, 251 N.Y.S.2d 665, 200 N.E.2d 563 (1964), section 3 of article XIII of the zoning ordinance of the city of Utica expressly provided that an appeal was required to be taken "within (30) days of the date of the decision." Building permits were issued on September 21, 1962, to the owner of land of which Pansa was an abutter. Pansa learned of the issuance of these permits on September 26, 1962, and on October 9, 1962, at a hearing held for that purpose, he requested the planning commission to revoke said permits. It appears that the matter was taken under advisement but Pansa was told that he would be advised of the commission's decision. On October 24, 1962, Pansa received notice that the permits would not be revoked and, the same day, took an appeal to the zoning board of appeals. This was some 33 days after the issuance of the permits. This appeal was held by the board of appeals not to have been timely taken.

On Pansa's appeal therefrom to the Court of Appeals of New York, that court reversed. Counsel for the zoning board of appeals argued that the "decision" referred to in

the Utica ordinance meant the issuance of the building permits. The court of appeals did not take issue with that contention but held that, in the circumstances of that case, Pansa's appeal to the board was timely.

Chief Judge Desmond, writing for the court, stated at 668, 200 N.E. 2d at 565:

> "It is the duty of the courts to construe statutes reasonably and so as not to deprive citizens of important rights. In performance of that duty we read section 3 of article XIII of the zoning ordinance as meaning that the prescribed 30 days does not begin to run against one who seeks revocation of a permit until his objections have been overruled in a 'decision' of which he has had notice. This presupposes the putting forward of the objections in proper form and within a reasonable time and without laches * * *."

Later, in *Highway Displays, Inc.* v. *Zoning Board of Appeals,* 300 N.Y.S.2d 605, 32 A.D.2d 668 (1969), the Court of Appeals of New York citing *Pansa* as precedent, held that where a building permit had been issued on July 19, 1967, of which abutting owners were not chargeable with knowledge until August 15, 1967, an appeal by them taken on August 30 was timely. This, notwithstanding an expressed requirement that appeals be taken within 30 days.

Although the point has not heretofore been considered by us in a zoning matter, Chief Judge Desmond's declaration in the *Pansa* case that it is the duty of courts to construe statutes reasonably, so as not to deprive persons of important rights, has found expression in this court.

We recognized and gave it meaning in *Wilkinson* v. *Harrington,* 104 R. I. 224, 243 A.2d 745 (1968), where this court stated:

> "To construe the statute narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest itself for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a

remedy before he knows of his rights, is palpably un-
just." *Id.* at 238, 243 A.2d at 753.

*See also State* v. *Haggerty,* 89 R. I. 158, 151 A.2d 382
(1959) and *State* v. *Huxford,* 35 R. I. 387, 87 A. 171 (1913).

Summing up, it is more probable that if the question
were squarely before us, we would be constrained to hold
that a rule or regulation adopted by a zoning board of
review pursuant to §45-24-16, which limited the taking of
an appeal to an arbitrary period of time from the date of
the appealed decision, rather than from the time when
the appellant was chargeable with knowledge of the deci-
sion from which he was appealing, would be contrary to
the intendment of the General Assembly's mandated right
of appeal.[5]

Neither, contrary to the Hartunians' contention, would
such a holding run counter to the thrust of *Bertrand* v.
*Zoning Board of Review, supra; MacGregor* v. *Zoning
Board of Review, supra* and *Nolfi* v. *Zoning Board of Re-
view, supra.*

In the first of these cited cases, the appeal was taken
by a property owner from a decision of the building in-
spector advising said owner that he should either remove
an erected garage or appeal to the zoning board of review.
Obviously, this appellant had actual notice of the decision
within 30 days so that the time limitation was not unrea-
sonable as to him.

In *MacGregor,* an examination of the record discloses
that the building permit was issued on July 24, 1961, and
that the board of review found as a fact that appellant was

[5]We are disturbingly aware that the administrative remedy as presently
provided, can and may often unnecessarily delay the holder of a building
permit from proceeding with the work for which it was issued. Much, if
not all of this problem, could be alleviated if the General Assembly, in
its wisdom, were to provide for at least constructive notice when building
permits are issued.

certainly chargeable with knowledge not later than August 19, 1961, some 26 days from the issuance of the building permit.

The appeal was not taken, however, until September 25, 1961, at which time the work for which the permit had been issued was substantially completed. In light of these circumstances the board found that the appeal had not been taken within a reasonable time. Affirming, this Court stated "In such circumstances we cannot say that the board's finding that the appeal was not taken within a reasonable time was arbitrary."

We then added, "In view of the undisputed evidence that the appeal was not filed *within thirty days from the date of the issuance* of the building permit the board did not err in denying it on the issue of timeliness." (emphasis ours)

The italicized language was purely gratuitous and adds nothing to our real holding, namely, that the board did not err in finding that an appeal not taken until more than a month after the appellant had actual knowledge of the decision from which he appealed was not an appeal taken in a reasonable time.

The *Nolfi* case simply holds that the board of review having adopted as a regulation that appeals " '* * * shall be taken within thirty days from the time such order, requirement, decision or determination is given,' " was bound by that regulation in that it constituted procedural due process. No contention was made that the regulation was violative of the legislative intendment of §45-24-16 and we so noted.

It is our judgment therefore that the Hardys' appeal is in order for the consideration of the Coventry zoning board of review and that, on passing on said appeal, the board must first determine, from all the circumstances presented

to it, whether the appeal was taken within a reasonable time.

The petition for certiorari is granted; the papers in the case are ordered returned to the Superior Court with our decision endorsed thereon.

## APPENDIX A.

### *Article VI — Zoning Board of Review*

Section 5.

    a. Appeals to the Board may be taken by any person aggrieved or by any officer, department, board, or bureau affected by any decision of the Building Inspector in the enforcement of this ordinance. Such appeal shall be taken within 30 days by filing with the Building Inspector and with the Board a notice of appeal specifying the grounds thereof. An appeal shall stay all proceedings in the furtherance of the action appealed from unless the Building Inspector certifies to the Board, after the notice of appeal shall have been filed with him, that by reason of facts stated in the certificate a stay would in his opinion cause imminent peril to life or property. In such case proceedings shall be stayed only by a restraining order which may be granted by the Board or by a court of competent jurisdiction on application therefor and upon notice to the officer from whom the appeal is taken and on due cause shown.

## APPENDIX B.

"45-24-7. Judicial aid in enforcement of ordinances. —The supreme court and the superior court, within their respective jurisdictions, or any justice of either of said courts in vacation, shall, upon due proceedings in the name of such town or city instituted by its town or city solicitor, have power to issue any extraordinary writs or to proceed according to the course of equity or both:

To restrain the erection, alteration or use of any building, structure or other thing erected, altered or used in violation of the provisions of any ordinance enacted under the authority of this chapter, and to order its removal or abatement as a nuisance;

To compel compliance with the provisions of any or-

dinance enacted under the authority of this chapter;

To order the removal by the owner of any building, structure or other thing existing in violation of any ordinance enacted under the provisions of this chapter and to authorize some official of such town or city in default of such removal by the owner to remove it at the expense of such owner."

## APPENDIX C.

"45-24-16. Appeals to board of review.—Appeals to the board of review may be taken by any person aggrieved or by any officer, department, board or bureau of the municipality affected by any decision of the administrative officer. Such appeal shall be taken within a reasonable time as provided by the rules of the board by filing with the officer from whom the appeal is taken and with the board of review a notice of appeal specifying the grounds thereof. The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken."

## APPENDIX D.

"45-24-17. Stay of proceedings on appeal.—An appeal shall stay all proceedings in furtherance of the action appealed from, unless the officer from whom the appeal is taken certifies to the board of review, after the notice of appeal shall have been filed with him, that by reason of facts stated in the certificate a stay would in his opinion cause imminent peril to life or property. In such case proceedings shall not be stayed otherwise than by a restraining order which may be granted by the board of review or by a court of competent jurisdiction on application therefor and upon notice to the officer from whom the appeal is taken and on due cause shown."

*Marion J. Dillon, Francis J. Maguire,* for Vernon Hardy et ux., petitioners.

*Howard I. Lipsey,* for George E. Matteson; *Arthur G. Capaldi,* Town Solicitor, and *Joseph F. Vitullo,* Asst. Town Solicitor, Town of Coventry; *James F. Murphy,* for Rev. Vartan Hartunian et ux., respondents.