321 A.2d 289.

VERNON H. HARDY *et al. vs.* ZONING BOARD OF REVIEW OF THE TOWN OF COVENTRY.

JUNE 27, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

ROBERTS, C. J. This petition for certiorari was brought to review the action of the Superior Court affirming a decision of the Zoning Board of Review of the Town of Coventry dismissing the petitioners' appeal from the issuance by the building inspector of that town of three building permits to the Hickory Ridge Campground, Inc., as the owner of a tract of land, identified as lot 151, on which it proposed to develop a campsite and trailer park. It is not disputed that at the time the permits issued the tract in question was within a district zoned for rural residential uses or that at that time under art. II, sec. 3(6), of the ordinance a "Camping area (Seasonal)" was a permitted use in such a rural residential district.

The record discloses that the permits issued on March 15, 1971, and authorized the construction of an office facility and three rest rooms and that "* * * said permits specified that the facilities would be for a camp site for two hundred tents and trailers on approximately twenty-four and one-half acres of the sixty-three acre tract."[1] The petitioners, contending that they were without knowledge that permits for such a use had issued until May 10, 1971, some 56 days thereafter, filed their appeal from the action of the building inspector on May 11, 1971. In so doing, they purported to act pursuant to the provisions of art. VI,

[1] Decision of the zoning board of review dated April 21, 1972, p. 3.

sec. 5(a), of the Zoning Ordinance of the Town of Coventry.[2]

The restricted scope of the question brought up for review by our writ of certiorari will be better understood after a brief discussion of certain of our rulings in *Hartunian* v. *Matteson*, 109 R. I. 509, 288 A.2d 485 (1972). Among other things, we there considered the validity of the provisions of art. VI, sec. 5(a) requiring that an appeal be taken from a decision of the inspector of buildings within 30 days. There we noted the limited power of the local legislature to restate the provisions of the enabling act. We made clear our adherence to the proposition that where in a zoning ordinance a local legislature purports to restate that for which provision is made in the enabling act, any attempt to expand or abridge in the zoning ordinance rights granted by the enabling act is ultra vires of the jurisdiction conferred upon such a local legislature by the General Assembly and, therefore, is void.[3]

Further, in *Hartunian* we reiterated our acceptance of the view that a provision of a zoning ordinance limiting the time within which an appeal could be taken to an arbitrary period from the date of the issuance of such permits "* * * rather than from the time when the appellant was chargeable with knowledge of the decision from which he was appealing, would be contrary to the intendment of the General Assembly's mandated right of appeal."

---

[2] Article VI, sec. 5(a), provides, in pertinent part: "Appeals to the Board may be taken by any person aggrieved or by any officer, department, board, or bureau affected by any decision of the Building Inspector in the enforcement of this ordinance. Such appeal shall be taken within 30 days by filing with the Building Inspector and with the Board a notice of appeal specifying the grounds thereof."

[3] It may well be significant that the ordinance does not provide, specifically at least, that such period shall begin to run at the time of the issuance of a permit by the building inspector.

Because of the view which we took in *Hartunian,* we remanded the matter to the board of review for a determination of whether the appeal had been taken within the reasonable time provided for in the enabling act, G. L. 1956 (1970 Reenactment) §45-24-16.[4] The board, pursuant to our remand, conducted a hearing and decided that the appeal had not been filed within the reasonable time contemplated in the statute. The petitioners prosecuted an appeal from the board's decision to the Superior Court, which affirmed the decision of the board of review. We thereupon issued our common-law writ of certiorari to review the decison of the Superior Court affirming that of the board of review.

Our writ brings before us for review a very narrow issue, that is, whether the board had jurisdiction to hear the appeal of petitioners on the merits thereof, that is, whether or not 200 camp and trailer sites for which the permits issued constituted a permitted use in a rural residential district. We remanded the matter primarily to require the board of review to first determine whether the claim of appeal of petitioners was filed within a reasonable time within the meaning of §45-24-16 and, if that had been done, the board had jurisdiction and should proceed to hear petitioners' appeal on the merits.

Thus, the question of whether petitioners' appeal had been filed within a reasonable time is antecedent to the question raised on the merits of petitioners' appeal, that is, whether the construction of a camping area providing sites for 200 trailers and tents was a permitted use within

---

[4]General Laws 1956 (1970 Reenactment) §45-24-16 provides, among other things, that any person aggrieved by a decision of an administrative officer may claim an appeal and requires that "[s]uch appeal shall be taken within a reasonable time * * *."

the provisions of art. II, sec. 3(6).[5] If the board on remand found that the appeal had been filed within a reasonable time, its obligation would be to then consider the merits of the appeal. The board, however, decided "* * * that a reasonable time commences from actual or constructive knowledge of the building activity and not from an awareness of the use to which the property will be put, namely, a camp site."[6]

The board in its decision makes abundantly clear the narrow confines of the issue brought up for review by our writ of certiorari. However, we desire to preface our resolution of that issue by reasserting our adherence to the proposition that a reasonable time as contemplated in §45-24-16 begins to run against an appellant only at such time as he becomes chargeable with knowledge of the decision from which he seeks to appeal. As we said in *Wilkinson* v. *Harrington*, 104 R. I. 224, 238, 243 A.2d 745, 753 (1968): "To require a man to seek a remedy before he knows of his rights, is palpably unjust."

We think also that the period of 30 days prescribed in the ordinance constitutes a sufficient compliance with the statutory requirement which one seeking to claim an appeal from a decision of an administrative officer must meet, provided, of course, that such period begins to run against such an appellant at the time he becomes chargeable with knowledge of the decision from which he seeks to appeal. We think it essential, and particularly in the regulation of land uses, that there be a definite period of time established within which a claim of appeal from such a decision must be made.

---

[5]The zoning ordinance in effect at the time the permits were issued provided in art. II, sec. 3(6), that "Camping area (Seasonal)" was a permitted use in a rural residential area.

[6]Decision of the zoning board of review dated April 21, 1972, p. 3.

Clearly, when a landowner has been granted a permit to make a particular use of his land, he is entitled to know when that decision will become final and no longer be subject to review or reversal by the board. Only in such circumstance may such a landowner feel secure in putting the land to the use granted him by the permit. It is equally true that those who object to the granting of a permit are entitled to know within what period of time they must appeal once they have acquired knowledge of the action or decision they desire to challenge. *Ehrenberg* v. *Persons,* 8 A.D.2d 18, 185 N.Y.S.2d 369 (App.Div. N.Y. 1959); *see* 2 Rathkopf, *The Law of Zoning and Planning* §1 at 41-3.

It appears from uncontradicted testimony that immediately after the permits issued on March 15, 1971, the landowner began the work of clearing the land of brush by the use of power saws, and grading the land by using bulldozers and some blasting. There is further evidence that cement floors for one or two of the small buildings authorized by the permits had been poured and that some 5,000 board feet of lumber had been stacked upon the land. These activities were referred to as "construction activity" by the landowner, who argues that they were sufficient, when conducted over a period from March 15 to May 10, some 56 days, to charge that petitioners either knew, or as reasonable persons should have known, that construction was under way on the tract.

The thrust of this contention is that petitioners had actual knowledge from such "construction activity" and, because they possessed that knowledge, they were under an obligation as reasonable persons to inquire into the nature of the proposed use of the land. The board of review apparently agreed with the landowner's contention and concluded that petitioners were chargeable with knowledge of such "construction activity" conducted "* * *

for a thirty-day period of time which we find expired prior to the filing of their appeal on May 10, 1971," and stated, in substance, that an inquiry into the "construction activity" would have revealed the purpose for which the property was to be used.[7]

The evidence here is such as to persuade us that petitioners were chargeable with knowledge of the "construction activity" conducted on the land over a period beginning shortly after March 15, 1971, and continuing through May 10, 1971. In the circumstances, however, we cannot agree that the knowledge possessed by petitioners was such as to obligate them as reasonable persons to ascertain the ultimate fact, that is, whether the use to which the land was to be put was a permitted use under the zoning ordinance. This requires a brief discussion, at least, of the doctrine of implied notice.

Implied notice has been defined as a factual inference of the possession of knowledge, inferred from the availability of a means of acquiring such knowledge, when the party charged therewith had the duty of inquiry. *McCausland* v. *Davis,* 204 So.2d 334 (Fla. 1967). In short, where one acquires knowledge of facts that are reasonably informative of the existence of an ultimate fact, a reasonably cautious person would thereby be led to the ultimate fact, and the courts will imply that such person had actual notice and, therefore, is chargeable with the knowledge of the ultimate fact.

However, the doctrine should be applied cautiously and only where one has acquired knowledge of facts that are so suggestive of the existence of an ultimate fact that a reasonably prudent person would be moved to investigate and ascertain the ultimate fact. In our opinion, and particularly in cases involving the regulation of land uses,

[7]Decision of the zoning board of review dated April 21, 1972, p. 3.

the doctrine should not be applied, and thereby deprive a person of a review of a decision by which he is aggrieved by charging him with knowledge of the ultimate fact, unless the known facts reasonably suggested the existence of the ultimate fact. *Black* v. *Public Service Elec. & Gas Co.*, 98 N.J. Super. 366, 237 A.2d 495 (1968); *Nordman* v. *Rau*, 86 Kan. 19, 119 P. 351 (1911); *Commercial State Bank* v. *Blackwell*, 61 S.W.2d 563 (Tex.Civ.App. 1933).

As we have already noted, we do not think the knowledge of "construction activity" with which petitioners were charged was of such a nature as to require them as reasonable persons to act to ascertain the purpose of such construction, particularly the proposed use to be made of the land. The record nowhere discloses activity on the land which, by its nature or scope, would lead a reasonable person to believe that the landowner intended to build and operate thereon a trailer park with a capacity of 200 camping units. The "construction activity" disclosed by the record cannot be held to suggest to a reasonable person that an illegal use of major proportions was proposed for the land.

The area under consideration is zoned rural residential, a comprehensive classification that obviously gives a landowner wide latitude as to the use he will make thereof. So far as it appears from the record, the area is typical of those rural areas to which the inhabitants of our cities flee in their search for a peaceful existence. Such a zoning classification makes it clear that substantial construction of varied character could be conducted on such land without raising the question in the minds of the residents of the area as to the consistency of such construction with the permitted uses provided for in the zoning ordinance.

The activities of the landowner on the tract in question during the 56 days that elapsed between March 15 and May 10 are of a sort frequently encountered by the resi-

dents of such rural areas. These residents, usually refugees from the noise and perils of urban areas, frequently experience a shattering of the bucolic calm of the rustic scene. They are familiar with the whine of the power saw, the clanking of the bulldozer, and the staccato chatter of the rock drill. The frequency of such cacophonic experiences has lulled their apprehensions concerning the probability that their Elysian domain may be blighted by the advent of motels, supermarkets, trailer camps, or other commercial ventures.

It may be that in some circumstances the stacking of lumber and other building materials on land might be so suggestive of illegal use thereof as to impose upon the nearby residents an obligation to inquire concerning the use. However, such circumstances are not present in the instant case. We cannot agree that the stacking of some 5,000 board feet of lumber on a 24-acre tract forecasts the development thereon of a facility that will house, even if temporarily, some 200 campers, their families, and their domestic pets.

When this court reviews a decision of a subordinate tribunal by way of certiorari, we limit our review to a determination of the presence in the record of legally competent evidence that will support the findings of that tribunal. We do not weigh the evidence. *Hardman* v. *Personnel Appeal Board,* 100 R. I. 145, 152, 211 A.2d 660, 664 (1965); *Masyk* v. *Parshley,* 94 R. I. 282, 290, 180 A.2d 314, 318 (1962). With this rule in mind, we conclude that there is in the instant record no legally competent evidence that the activities being conducted on the tract, and with respect to which petitioners were charged with knowledge, were being carried on for the development of a use thereon that would be inconsistent with the provisions of the zoning ordinance. It follows, therefore, that the knowledge possessed by petitioners concerning the

"construction activity" did not impose upon them a duty to inquire whether the use to be made of the land would be violative of the provisions of the zoning ordinance.

It is, then, our opinion that the petitioners first became aware of the use to which the land was to be put when they were informed thereof by the building inspector on May 10, 1971, and that their appeal, filed on May 11, 1971, was taken within a reasonable time as contemplated in the statute. We conclude, then, that the trial justice erred in finding that the decision of the board of review was supported by legally competent evidence and that this case should be remanded to the zoning board of review with direction that the appeal of the petitioners be heard on its merits.

The petition for certiorari is granted, and the papers in the case are returned to the Superior Court for further action in conformity with this opinion.

*Marion J. Dillon, Francis J. Maguire,* for petitioners.

*Paul A. Anderson, Asst. Town Solicitor,* for respondent.