DECISION
Before this Court is the appeal of Patrick Kilroy ("Appellant") from a decision of the Zoning Board of Review of the Town of Jamestown ("Board"), denying his request for a dimensional variance pursuant to the Zoning Ordinance of the Town of Jamestown ("Ordinance"). The Board's written decision, dated March 28, 2007, was filed on June 4, 2007. Appellant filed a timely appeal to this Court on June 11, 2007. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I FACTS AND TRAVEL
The lot in question is located on Conanicus Avenue, described as Lot 352 on Tax Assessor's Plat 9 of the Town of Jamestown, Rhode Island (the "Property").[1] The Property is adjacent to Type 3 Waters and its use is subject to Coastal Resource Management Council ("CRMC") approval. Additionally, the Property contains a drainage easement, owned by the State of Rhode Island, and an associated drainage pipe traversing the Property. Appellant proposes to situate a dwelling directly above the easement and drainage. The Property is located *Page 2 
in an R-40 zoning district, which requires 40,000 square feet minimum lot size to build a single-family dwelling.[2] Ordinance § 82-302. The Property contains approximately 6370 square feet and is currently undeveloped. Appellant sought a dimensional variance in order to construct a 1016 square foot single-family dwelling with a front yard set back of 15 feet, instead of the required 30 feet. See Ordinance § 82-302 R-20 Zoning District Table.
The Board held two properly noticed public hearings regarding Appellant's application on January 23, 2007 and March 27, 2007. At the January 23, 2007 hearing, Appellant testified that he was seeking dimensional relief in order to construct a "small, tiny house for [his father] to retire in." (Tr. 1/23/07 at 27.) When questioned by counsel as to whether his proposed driveway would comply with the Department of Motor Vehicles' Operator's Manual for stopping distances on Conanicus Avenue, Appellant offered his lay opinion that there would be sufficient stopping distance from both directions. Id. at 33-36. Turning to the size of the proposed dwelling, Appellant testified that it "is the smallest house that we can comfortably live in, single family, but really made for a single person." Id. at 38 (emphasis added). Appellant also testified that he intended to construct two parking spaces to service the proposed single-family dwelling, and that these parking spaces would be located in the fifteen foot front setback.[3]Id. at 46. However, Appellant indicated that the size of the proposed parking spaces would require the vehicles to back out onto Conanicus Avenue. Id. at 47.
Appellant then presented the testimony of Abigail Campbell King ("King"), a licensed architect in the State of Rhode Island, and Thomas O. Sweeney ("Sweeney"), a real estate broker *Page 3 
and appraiser with Rodman Real Estate Appraisal. King testified that the single-family dwelling that Applicant sought to build on the lot was designed to imitate the "Bevins" style home to make the dwelling compatible with the neighborhood. Id. at 52. Although King testified that the proposed dwelling "was the simplest, smallest one-bedroom house [Appellant] could do," she responded that, "a double-wide . . . is apossibility," when questioned as to whether a smaller building with less interior square footage could be constructed. Id. at 59 (emphasis added). Upon questioning as to whether a smaller dwelling would be "reasonable," King responded, "Yes, it is reasonable. . . . There is always something bigger, always something smaller. This is the best I could do given what [Appellant and his father] want[ ]." Id. at 77 (emphasis added).
The Board next heard testimony from Sweeney. Sweeney opined that King "[could] make it smaller," although "[t]o go any smaller, to change the design . . . would probably have a detrimental impact on the neighborhood." Id. at 82. He further testified that "looking at the neighborhood in general, the size and scope of this house reflects the neighborhood in general. . . . I believe that the size is reflective of what in my opinion as a real estate person would be the minimum size."Id. at 81. However, when asked whether he agreed with King's assessment that a smaller single-family dwelling could be built on the lot, Sweeney responded, "I would say she could do it[.]" Id. at 85.
During the March 27, 2007 hearing, counsel for the objectors indicated that Appellant failed to obtain a "permit from the Rhode Island Department of Transportation, State of Rhode Island ("DOT")," to disturb a 24-inch drainage easement running through the subject lot into Narragansett Bay. (Tr. 3/27/07 at 5-6.) He indicated that the proposed single-family dwelling *Page 4 
"is right over the place where the State of Rhode Island's [drainage] pipe is."[4] Id. at 12. Counsel for the objectors argued that satisfactory arrangements had not been made in the architect's plans regarding ingress and egress to the subject lot, and that the plans would "have cars backing out to Conanicus Avenue at probably one of the most dangerous spots in Jamestown[.]"[5] Id. at 9. Finally, he pointed out to the members of the Board that the planned development of the lot did not comport with provisions in the Ordinance requiring applicants to establish "environmental compatibility and safeguards to protect the natural environment." Id. In support of this argument, counsel for the objectors focused the Board's attention on a highly unfavorable Preliminary Determination by CRMC. (8/23/06 Letter from CRMC with Attached 3/7/06 Report to Appellant.)
At the conclusion of the March 27, 2007 hearing, the Board unanimously voted to deny Appellant's request for dimensional relief. (Tr. 3/27/07 at 45.) Mr. Boren, speaking for the Board, included in the record the Board's reasons for opposing the application. He stated that the application did not satisfy the requirements of Article 6 of the Ordinance, specifically sections 600, 606, and 607(2). Id. at 46. Mr. Boren stated that King's preliminary plans for the single-family dwelling — while consistent with the neighborhood — "could be smaller."Id. at 46. He further stated that the application was "inconsistent with the environmental compatibility and safeguards to the natural environment," based on the "unique, fragile, and scenic coastal area and the comprehensive plan's . . . require[ment] [that] such land be protected, if possible." Id. at 47. Mr. Boren and the other members of the Board placed great weight on the CRMC's preliminary *Page 5 
determination that "development of th[e] site [was] inconsistent with many elements of the Rhode Island Coastal Resources Management Program."Id. at 47. Finally, Mr. Boren stated that Appellant failed to adequately address the issue of DOT's drainage easement and ingress and egress to the lot and the proposed single-family dwelling. Id.
The instant appeal followed. Appellant timely appealed the decision of the Board within twenty days of the decision; the decision was dated March 28, 2007, recorded June 4, 2007, and the appeal was filed on June 11, 2007. Appellant timely sent its Notice of Appeal to the abutters on June 12 through June 18, 2007, and timely filed its notarized Affidavit on July 11, 2007.
On appeal, Appellant maintains the Board has prejudiced substantial rights of the Appellant in that the decision to deny the dimensional variance was (1) in violation of the provision of Chapter 24 of Title 45 and the Ordinance; (2) in excess of the authority granted to the Board by Chapter 24 of Title 45 and the Ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of reliable, probative and substantial evidence of the whole record; and (6) arbitrary and capricious or characterized as an abuse of discretion or clearly unwarranted exercise of discretion. See Complaint. Appellant seeks a reversal of the Board's decision.
 II STANDARD OF REVIEW
The Superior Court's review of a zoning board's decision is governed by § 45-24-69.
Section 45-24-69(d), in relevant part, provides as follows:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are: *Page 6 
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In its review, this Court must give deference to the decision of the Board, the members of which are presumed to have special knowledge of the rules related to the administration of zoning ordinances.Monforte v. Zoning Bd. of Review of East Providence, 93 R.I. 447, 449,176 A.2d 726, 728 (1962). Although this deference must not rise to the level of "blind allegiance," Citizens Savings Bank v. Bell,605 F. Supp 1033, 1042 (D.R.I. 1985), this Court conducts a de novo review of questions of law, not questions of fact. See Monroe v. Town of EastGreenwich, 733 A.2d 703, 705 (R.I. 1999) (recognizing "`traditional judicial' review standard that is applied in administrative-agency actions").
Accordingly, this Court's review is limited to an examination of "`the entire record to determine whether `substantial' evidence exists tosupport the board's findings.'" Mill Realty Assocs. v. Crowe,841 A.2d 668, 672 (R.I. 2004) (quoting DeStefano v. Zoning Bd. of Review,122 R.I. 241, 241, 405 A.2d 1167, 1170 (1979)) (emphasis added). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, [or an] amount more than a scintilla but less than a preponderance." Lischio v. ZoningBd. of Rev. of North Kingstown, 818 A.2d 685, 690 (R.I. 2003) (quoting *Page 7 Caswell v. George Sherman Sand and Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). Should the Court find that such competent evidence exists in the record to support the Board's findings, its decision must be affirmed.Monroe, 733 A.2d at 705.
 III ANALYSIS
On appeal, Appellant argues the Board's conclusion that Appellant did not request the least relief necessary is arbitrary and capricious and characterized by an abuse of discretion. Specifically, Appellant contends that the Board ignored exhibits tending to show that the proposed single-family dwelling could not be re-positioned to fit within the buildable area and misconstrued King's testimony to conclude that a smaller structure could be built. Next, Appellant argues that the Board's environmental impact findings were in excess of the authority granted to it by the Zoning Enabling Act. The Appellant further argues that the Board's findings, concerning the DOT drainage easement and the safety of Appellant's proposed driveway, are in excess of the Board's authority and characterized by abuse of discretion. Finally, Appellant asserts that the Board's decision runs afoul of the "takings" clause of the Fifth Amendment of the United States Constitution in that it completely deprives Appellant of all economically beneficial use of his property.
Conversely, the Board argues there is substantial evidence in the record that supports the decision of the Board not to approve the Appellant's application for a dimensional variance. The Board argues a careful reading of the transcript supports its conclusion that the Appellant's proposal did not meet the requirements of the Ordinance. Specifically, the Board argues that the Appellant's expert testimony directly supports its finding that the Appellant failed to establish that the relief requested was the "least relief necessary," as required for a dimensional variance. In addition, during the March 27, 2007 hearing, the Board held that the application failed to *Page 8 
satisfy the requirements of the Ordinance, with particular references to Ordinance § 82-600(A) and (I). The Board contends that the Appellant failed to show the proposal had adequate ingress/egress or motor vehicle parking. The Board also argues that a letter provided by CRMC indicates that there would be several environmental problems if the Appellant were to construct the proposed dwelling on the Property.
 A The Dimensional Variance
With respect to dimensional variances, the Board must require evidence entered into the record to the satisfaction of particular standards. Specifically, § 45-24-41(c) provides in pertinent part that the evidence must demonstrate the following:
 (1) The hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) The hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) The granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) The relief to be granted is the least relief necessary. See Ordinance § 82-606.
In addition to the above standards, the Board shall further require for granting a dimensional variance that:
 [T]he hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. . . . The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is *Page 9 
not grounds for relief. Section 45-24-41(d)(2); see Ordinance § 82-607(2).
Pursuant to § 45-24-41, "for an applicant to obtain a dimensional variance (also known as a deviation), the landowner need[s] to show only an adverse impact that amounted to more than a mere inconvenience."Lischio, 818 A.2d at 691. In Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001), the Rhode Island Supreme Court cautioned zoning boards and their attorneys to ensure that zoning board decisions on variance applications address the evidence in the record, and determine whether that evidence either meets or fails to satisfy each of the legal preconditions set forth in G.L. 1956 § 45-24-41(c) and (d). See Sciacca, 769 A.2d at 585.
 1 Board's "Least Relief Necessary" Determination
At the outset, Appellant argues that the Board's decision is clearly erroneous in light of the reliable, probative, and substantial record evidence. Particularly, Appellant contends that the Board had before it legally competent documentary and testimonial evidence tending to show that Appellant requested "the least relief necessary," as required by § 45-24-41(c)(4). Appellant draws this Court's attention to evidence adduced at the hearing indicating Appellant could not meet, or come closer to meeting, the 30-foot front setback required by the Ordinance. This evidence consisted of the following: (1) a survey of the lot drawn by a professional land surveyor illustrating that it would be impossible to re-position Appellant's proposed single-family dwelling within the buildable area of the lot, as defined by zoning and CRMC setback requirements; and (2) the testimony of Architect King that it would be impossible to construct a smaller, habitable dwelling on the lot. However, this Court recognizes that the Board also had before it probative countervailing evidence — at least with respect to the second point — indicating that a smaller, habitable dwelling could be built on the Property. *Page 10 
There is considerable testimony from Appellant's architect confirming that the proposed dwelling could, in fact, be a smaller dwelling:
 A. So, to answer your questions, can this be smaller? Not really. It's a one-bedroom, one-bathroom one-closet one-stair. . . . [W]e looked at larger things, and this was the simplest. . . . Q. Would a smaller building with less interior square footage be appropriate at this location? A. Not unless you want a double-wide, which is a possibility. . . . [A]nything smaller and less articulated and well-built would be a detriment to the rest of the values. It would be a stupid little box. . . . Q. Would you . . . design a house, with this lot in mind, a single-family house, is there any reasonable smaller house that can be built here? A. Well, I can design anything. . . . Yes, it's reasonable, but my job, when my client says, "I want something" and I look at the place and try to marry the two, I have done the best I can. There is always something bigger, always something smaller. This is the best I could do given what they want. (Tr. 1/23/07 at 59, 64, 77.)
Additionally, Appellant's real estate expert stated that he believed that the architect could build a smaller house, although it may be a detriment to the neighborhood. Id. at 85; see Restivo v.Lynch, 707 A.2d 663, 671 (R.I. 1998) ("[T]here is no talismanic significance to expert testimony" and such testimony "may be accepted or rejected by the trier of fact."). Appellant himself stated that the proposal is the smallest house that he could "comfortably" live in. (See Tr. 1/23/07 at 38.) Appellant suggests that all of these statements were taken out of context.
While the Ordinance does not seek to deprive Appellant of all use of his land, the burden is on Appellant to demonstrate that the dimensional variance sought is, in fact, the least relief necessary.Lischio, 818 A.2d at 693-94 (citing von Bernuth v. Zoning Board ofReview of New Shoreham, 770 A.2d 396, 401 (R.I. 2001)) ("When seeking a dimensional variance, an applicant bears the burden of demonstrating to the satisfaction of the zoning board that there is evidentiary support for the proposition that there are no reasonable alternatives that allow the applicant to enjoy a legally permitted beneficial use of his or her property."). Having reviewed the entire *Page 11 
record, this Court is satisfied that there was substantial evidence in the record from which the Board could have concluded that Appellant's proposed single-family dwelling did not meet the "least relief necessary" requirement for the granting of dimensional relief.See § 45-24-41(c)(4). The Court finds that the Board's decision that Appellant failed to show that the requested relief is the "least relief necessary" is supported by the reliable, probative, and substantial evidence of record.
 2 Board's Considerations of Other Factors
Next, Appellant argues that the Board acted in excess of the authority granted to it by the Zoning Enabling Act, § 45-24-1, et. seq., in considering additional issues underlying Appellant's application for dimensional relief. It is Appellant's contention that the Board — in considering the myriad of factors contained in Ordinance § 82-600(A)-(K) — added a fifth requirement to those contained in Ordinance § 82-606 for the granting of a dimensional variance: that the applicant has made satisfactory provisions and arrangements concerning ingress/egress and environmental compatibility and safeguards to protect the natural environment. Ordinance § 82-600(I). As the Zoning Enabling Act does not, by its express terms, require resolution of environmental issues prior to the granting of dimensional relief, Appellant asserts that the Board's decision to analyze these issues was improper and invaded the province of the CRMC.
The courts of this state "have long recognized that a local zoning ordinance may not change or enlarge upon the specific authority contained in the state enabling legislation, and the jurisdiction thereby conferred can neither be expanded nor diminished by the terms of an ordinance." American Oil Co. v. City of Warwick, 116 R.I. 31, 35,351 A.2d 577, 579 (1976). If an ordinance in providing for a variance merely restates the terms of the Zoning Enabling Act, "such repetition thereof in [the] zoning ordinance is mere surplusage." Hartunian v.Matteson, *Page 12 109 R.I. 509, 516, 288 A.2d 485, 489 (1972). "On the other hand, if it purports to authorize something more or something less, it is a nullity." Lincourt v. Zoning Board of Review, 98 R.I. 305, 201 A.2d 482
(1964).
Here, "the power [of the Board] to grant variances . . . [was] neither enlarged nor restricted by provisions contained in" the Ordinance.Reynolds v. Zoning Bd. of Review of Lincoln, 96 R.I. 340, 343,191 A.2d 350, 353 (1963) (citing Mello v. Zoning Bd. of Review of Newport,94 R.I. 43, 44 177 A.2d 53 (1962)). Ordinance § 82-606 merely restates the terms of the Zoning Enabling Act governing the granting of dimensional relief, § 45-24-41(c) and (d). Ordinance § 82-600, by contrast, alters the procedure — and not the substance — of the jurisdiction conferred upon the Board by the state enabling act. See Carlson v. Town ofSmithfield, 723 A.2d 1129 (R.I. 1999) (holding that zoning ordinances cannot enlarge or restrict substantive provisions of enabling act, but can impose procedural steps in addition to those required by act). The Board is still required to consider four — and only four — requirements when considering whether to grant dimensional relief.
Although the Board's consideration of the eleven factors enumerated in Ordinance § 82-600 is mandatory rather than discretionary, these factors are not controlling of the Board's ultimate decision on an application for dimensional relief. In granting a variance, Ordinance § 82-600 requires the Board to consider whether the following are satisfactory: ingress/egress to the lot with reference to safety, traffic, and emergency access, Ordinance § 82-600(A); off-street parking, Ordinance § 82-600(B); utilities and water drainage with reference to locations, availability and suitability, Ordinance § 82-600(D); screening and buffering with reference to type, dimensions and character, Ordinance § 82-600(E); and environmental compatibility and safeguards to protect the natural environment, Ordinance § 82-600(I). In the instant case, the *Page 13 
Board found that Appellant's proposed dwelling did not meet the ingress and egress or the environmental compatibility requirements of Ordinance §§ 82-600(A) and (I).
In granting a dimensional variance, the Board must make a determination that the proposal "will not alter the general character of the surrounding area or impair the intent or purpose of the [O]rdinance"[6] and will be in conformity with the comprehensive plan upon which the Ordinance is based. See Ordinance § 82-606(3). This Court finds the Board may consider the Ordinance § 82-600 factors in this determination. See Reynolds v. Zoning Bd. of Review of Town ofLincoln, 96 R.I. at 343, 191 A.2d at 353 (It was the intention of the legislature to vest in [zoning] boards a jurisdiction sufficiently broad to accomplish its obvious purpose of reviewing zoning matters.);see also Harrison v. Zoning Bd. of Review of City of Pawtucket,74 R.I. 135, 143, 59 A.2d 361, 365 (R.I. 1948) (If the policy of the ordinance permits it, the court will not disturb the zoning board's decision if there is evidence to support its finding.). There is simply no evidence before this Court that the Board, in its decision, exceeded its statutory authority.
 B Takings Clause
Appellant argues the Board's denial of a dimensional relief has deprived him of all economically beneficial use of his Property in violation of the takings clause of the 5th Amendment of the United States Constitution. Appellant claims the Board's decision has prevented him from building his proposed plan, amounting to a confiscation of his Property for the public. *Page 14 
There was no taking claim in the Complaint filed by Appellant. However, at the March 27, 2007 hearing, Counsel for Appellant argued:
 If you go back to the Supreme Court, Tiburon, an application of general law to a particular property, in effect a taking of, the ordinance denies an owner economically available use of his land. The zoning board or the city counsel, town council in this city, in this town, has identified this lot not as open space. They could have done that easy. Residential. . . . The comp plan already said that is residential.[7] (Tr. 3/27/07 at 40).
Appellant relies upon Agins v. City of Tiburon, 447 U.S. 255, 257-259,100 S.Ct. 2138, 2140 — 2141 (U.S.Cal. 1980), wherein the Supreme Court held no taking occurred, but discussed the legal analysis related to a takings claim. However, here Appellant failed to properly brief this issue for this Court's review. See Fisher v. Applebaum, 947 A.2d 248,252 (R.I. 2008); see also Wilkinson v. State Crime LaboratoryCommission, 788 A.2d 1129, 1131 n. 1 (R.I. 2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue."). Here, not only did Appellant fail to make this claim in his Complaint, he failed to meaningfully brief this issue in his appeal to this Court.
Even assuming arguendo that a takings claim was properly made, a review of the record indicates that the Board had evidence of record to support its finding that a smaller house could be built on the Property. Thus, Appellant has failed to show that he has been denied all economically beneficial use of his land. See City of Warwick v. DelBonis Sand Gravel Co., 99 R.I. 537, 541, 209 A.2d 227, 230 (R.I. 1965) ("Zoning laws regulate the use of property and may impair the owner's rights therein to some reasonable extent without compensation, because the Legislature, acting under the police power of the state, deems the free exercise of such rights detrimental to the public interests.") (quoting Robinson v. Town Council, 60 R.I. 422, 434, 199 *Page 15 
A. 308 (1938)). (Emphasis in original.) The Board's denial of the Appellant's application for a dimensional variance does not preclude the Appellant from bringing forth a new plan with a different, smaller design from the previous one. The Appellant may submit other plans and proposals for the use of his land.
 IV EQUAL ACCESS TO JUSTICE
The Appellant has also asked this Court to consider its request for reasonable litigation expenses pursuant to the Equal Access to Justice for Small Businesses and Individuals Act, G.L. 1956 § 42-92-1,et. seq. (the "Act"). Under the Act, expenses may be awarded to those litigants who prevail against an agency determination on appeal.See § 42-92-1(b). However, no expenses are warranted in the present appeal because this Court affirms the Board's decision. Accordingly, this request requires no further analysis and is denied.
 V CONCLUSION
After review of the entire record, this Court affirms the decision of the Board denying dimensional relief. The Court finds that the Board's decision was not affected by error of law and the Board did not act in excess of its statutory authority or in violation of Ordinance provisions. Furthermore, this Court is satisfied that the Board's decision was supported by substantial evidence and is therefore not clearly erroneous, arbitrary and capricious, or an abuse of discretion. Substantial rights of Appellants have not been prejudiced. Further, the Court denies Appellant's request for reasonable attorney's fees pursuant to the Equal Access to Justice for Small Businesses and Individuals Act, § 42-92-1, et. seq.
Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] The subject property was once the location of the Conanicut Yacht Club ("Yacht Club"). The Yacht Club was destroyed by fire and completely demolished in 1967, and was never sought to be redeveloped until now.
[2] Although the lot in question is located in an R-40 zoning district, it is governed by the district dimensional requirements for the R-20 zoning district, as the lot was 20,000 square feet or less at the time Ordinance Chapter 82 was adopted. However, the Ordinance makes it clear that the minimum lot size set forth for the R-20 zoning district shall not apply to such lots. Ordinance § 82-302.
[3] The Appellant testified that the vehicles would have to park one in front of the other, as there would not be enough space for the vehicles to park side-by-side. (Tr. 1/23/07 at 47.)
[4] Counsel for the objectors argued that Appellant had actual or constructive knowledge of the existence of the Department of Transportation's drainage easement at the time he purchased the subject property. (Tr. 3/27/07 at 13.)
[5] Mr. George Wilkie, a witness for the objectors and a neighboring property owner, testified that during the months of June, July, and August, there are vehicles parked "all the way up the street," and that if Appellant wanted to back out of his proposed driveway he "would have to be all the way in the middle of the road before he could see past all the vehicles parked there." (Tr. 3/27/07 at 17.)
[6] The purpose of the Ordinance is to accomplish the following: (1) Protect the public health, safety and welfare of the community. . . . (4) Protect existing natural and built environments and mitigate the significant negative impacts of proposed development on those environments; (5) Promote [ ] land development designs that are well-integrated into surrounding neighborhoods. . . . (6) Provide for design and construction standards that are appropriate to the community. . . . (8) Direct the development of land consistent with state of the art practices that promote and foster growth in a manner that protects the Town's rural character while at the same time accommodating economic growth. . . . (10) Insure that proposed designs institute best management practices that acknowledge existing site constraints and the natural setting. See Ordinance Article I (A).
[7] This is the only instance in which a takings claim is mentioned throughout the entire transcript. *Page 1